Howard YOUNG, Plaintiff–Appellant,

v.

GENERAL FOODS CORPORATION, Defendant–Appellee.

No. 87–3479.

United States Court of Appeals, Eleventh Circuit.

March 21, 1988.

John MacLennan, Kattman, Eshelman & MacLennan, Jacksonville, Fla., for plaintiff-appellant.

Patricia Sabalis, White Plains, N.Y., for defendant-appellee.

Before HILL and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This case involves a complaint filed under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. The district court granted summary judgment to the employer, holding that the employee had failed to establish pretext, an element essential to his case. We affirm.

## I. STATEMENT OF FACTS

Howard Young began working for General Foods Corporation in 1960. Three years later, Young became a Military Sales Representative in the company's Military Sales Division, responsible for the area including Jacksonville, Florida. In 1981 Young and the other Military Sales Representatives were "upgraded" to the position of Territory Sales Managers (TSMs). In November 1982 Young was placed on probation for poor work performance, and on December 1, 1983 he was fired. Young was 59 years old at the time of termination. He was replaced by a man 26 years old.

During much of his tenure at General Foods, Young's supervisor was Robert Bell. Young received raises and bonuses during this period, although the bonuses were given in equal amounts to all TSMs in a region based on overall region, rather than individual territory, performance. However, Young's affidavit contains a performance appraisal written by Bell in 1981 that stated that Young had not met his budget for two quarters of the fiscal year, had a "tendency to become lax at times," and had failed to complete specific assignments and satisfactorily perform administrative tasks associated with his job.

In April 1982 John Biltgen replaced Bell as the Area Regional Sales Manager for the southeast region. Between April and November 1982 Young and Biltgen had several disagreements. Among other things, the pair disagreed over the value of making formal sales presentations. Several times Biltgen asked Young to develop a plan of action in that area; however, Young continued to rely solely on his past relationships with commissary officials in order to make sales. Biltgen also continued Bell's practice of formulating written "contracts" with each TSM. The initial agreement between Biltgen and Young, developed in April, identified goals in the areas of sales volume, business growth, personal development, and cost effectiveness. On October 28, 1982, Biltgen completed a six-month written evaluation of Young. The evaluation included statistical information showing that the sales volume growth and "budget accomplishment" in Young's area trailed that of the region average. Biltgen criticized Young's "[p]resentations of new ideas" and stated that Young was "not proactive in the presenting, following through or shelving of new items." A listing of new items to be distributed also indicated that Young had not met his distribution objectives, which re-

sulted in some of Young's customers being the only ones in the region not to stock certain items. In the "business building" area, Biltgen criticized Young's lack of account development, noting that Young had neither developed a strategy to improve business nor submitted any merchandising ideas. Finally, Biltgen wrote that Young was "not maximizing volumes because of [his] non-aggressive/non-proactive posture" and that Young was "not managing in an aggressive manner and his trust level ha[d] been severely damaged." Excepting some of the sales figures, Young did not dispute Biltgen's comments contained in the evaluation.

Consequently, Biltgen placed Young on probation effective November 22, 1982. Under the probationary terms, Young would be subject to termination unless he showed "substantial progress" by March 1, 1983. In a May 1983 evaluation, Biltgen reviewed Young's status and concluded that, instead of being terminated, Young would "remain on formal probation with employment being extended on a month-to-month basis." At this time the majority of Young's sales and budget figures continued to be below the average for the region, prompting Biltgen to opine in the evaluation that "[t]here is ... the feeling ... that [Young] was not being proactive enough in going 'belly to the bar' with new items and following up accordingly." In Young's final evaluation of November 10, 1983, Biltgen wrote that some of Young's customers continued to be the only ones not stocking certain items, that Biltgen himself had been forced to make certain presentations that should have been completed by Young, and that Young had yet to present any ideas for building business. Biltgen also noted that Young's damaged merchandise expenses were the highest in the region. Prior to the final evaluation Young's budget accomplishments and volume figures had improved vis-a-vis the region; however, the improved volume performance resulted almost exclusively from sales of CRYSTAL LIGHT beverage. Because Young's territory was the only one merchandising the beverage, Biltgen recomputed Young's volume figures without CRYS-TAL LIGHT sales in order to obtain a more accurate picture of Young's performance relative to the other TSMs in the region. The recomputed figures placed Young last in the southeast.

Approximately two weeks before filing the final evaluation, Biltgen informed Young that Young would be terminated prior to December 31, 1983. On November 14, 1983, Biltgen drafted a memorandum notifying Young of his termination, effective that date. On November 21–22, 1983, Biltgen met with Young and attempted to persuade Young to retire instead. When Young refused to do so, Biltgen again terminated him, effective December 1, 1983.

Subsequently, Young filed suit against General Foods, claiming that Biltgen's actions showed an intent to discriminate against Young because of age. Young pointed specifically to Biltgen's deletion from volume figures of Young's sales of CRYSTAL LIGHT, Biltgen's remarks that Young lacked the "wherewithal" to perform his job, "moved in slow motion," and was "not proactive" and "not aggressive." Young also stated that Biltgen had made a remark comparing Young's age with that of Biltgen's father. The district court granted summary judgment to General Foods, however, holding that Young had neither produced direct evidence of discrimination nor evidence of pretext undermining the employer's assertion that he was fired because of poor job performance. From that decision Young now appeals.

## II. DISCUSSION

Young contends that the district court erred in not considering some of Biltgen's remarks to constitute direct evidence of discrimination. Young also argues that he established a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and raised a genuine issue of material fact regarding whether General Foods' rationale for his termination was pretextual. General Foods asserts that Young presented neither direct evidence of discrimination nor sufficient evidence of pretext to withstand a motion for summary

judgment. We agree that Young presented insufficient evidence of age discrimination to require submission of the case to a jury and that summary judgment for General Foods, therefore, was appropriate.

## A. *Introduction*

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if "there is no genuine issue as to any material fact and [if] the moving party is entitled to a judgment as a matter of law." According to the Supreme Court:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court also has noted that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted); *see Barnes v. Southwest Forest Indus., Inc.,* 814 F.2d 607, 609 (11th Cir.1987) (equating standards for granting summary judgments and directed verdicts).

In cases brought under the Age Discrimination in Employment Act (ADEA), the plaintiff bears the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate his employment. *See Anderson v. Savage Laboratories, Inc.,* 675 F.2d 1221, 1224 (11th Cir.1982). Initially, a plaintiff must establish a prima facie case of age discrimination. One such way is to produce direct evidence of discriminatory intent. If a plaintiff produces direct evidence, the employer must then prove that the same employment decision would have been reached even absent any discriminatory intent. *See Buckley v. Hospital Corp. of America,* 758 F.2d 1525, 1529–30 (11th Cir.1985). Alternatively, a prima facie case may be shown by proving that the plaintiff (1) was a member of the protected group,[1] (2) was discharged, (3) was replaced with a person outside the protected group, and (4) was qualified to do the job.[2] *See id.* at 1529 (discussing the *McDonnell Douglas* test). If a plaintiff establishes a prima facie case under *McDonnell Douglas,* the employer must articulate a legitimate, nondiscriminatory rationale for the discharge. If the employer does so, the burden shifts back to the plaintiff to prove that the employer's asserted reason is pretextual. *See Anderson,* 675 F.2d at 1224.

This court has discussed many times the relationship between the *McDonnell Douglas* standard for proving age discrimination and the grant of summary judgment. *See, e.g., Mauter v. Hardy Corp.,* 825 F.2d 1554 (11th Cir.1987); *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590 (11th Cir.1987); *Barnes,* 814 F.2d at 608–10; *Pace v. Southern Ry. Sys.,* 701 F.2d 1383 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). In particular, the fact that a plaintiff has established a prima facie case does not in and of itself foreclose the possibility of summary judgment being granted in favor of the employer. *See Pace,* 701 F.2d at 1391. With regard to establishing pretext:

> A plaintiff, when faced with a motion for summary judgment, ... must respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact. Even where a prima facie

1. The protections of the ADEA are limited to persons between the ages of 40 and 70. *See* 29 U.S.C. § 631(a).

2. *See infra* note 3. A prima facie case also may be established by statistical proof of a pattern of discrimination. *See Buckley,* 758 F.2d at 1529.

case has been established but the defendant has rebutted with a proffer of legitimate, non-discriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented.... [O]nce established a prima facie case creates a rebuttable presumption of discrimination; but this presumption alone does not create an inference that a material fact, sufficient to present a jury question, is in issue.

*Id.; see also Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285, 291 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). Because the plaintiff bears the burden of establishing pretext, he must present "significantly probative" evidence on the issue to avoid summary judgment. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

### B. *Direct Evidence*

■ Before proceeding to our discussion of pretext, we confront initially Young's claim that he produced direct evidence of discrimination. According to Young, Biltgen's oral and written comments that Young lacked the "wherewithal" to perform his job, "moved in slow motion," and was "not proactive," "not aggressive," and approximately the same age as Biltgen's father all constitute direct evidence of discrimination. We do not agree.

It is clear that not every comment concerning a person's age presents direct evidence of discrimination. *See, e.g., Barnes,* 814 F.2d at 610–11 (statement that plaintiff would have to take another physical examination "and at your age, I don't believe you could pass it," while "inappropriate and condescending," was not direct evidence of discrimination); *see also Mauter,* 825 F.2d at 1558; *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 n. 2 (6th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). Here, the majority of Biltgen's comments do not even directly concern Young's age. Rather, the remarks in the evaluations that Young lacked the

wherewithal to adequately perform his job, moved in slow motion, and was neither aggressive nor "proactive," at most referred only to characteristics sometimes associated with increasing age. As this court has stated, " 'Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or *diminished vigor and competence.*' " *Barnes,* 814 F.2d at 611 (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016 (1st Cir.1979)) (emphasis added).

Equally as important, the remarks are not *directly* probative of an intent to discriminate. This is not a case where Biltgen told Young that he would be fired because he was too old. *See Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1558 n. 13 (11th Cir.1988) (discussing "direct" evidence of discrimination). Instead, it is a case where *the plaintiff has inferred* that certain facially neutral comments referred to his age in a discriminatory fashion. However, in evaluating any salesman's performance, statements regarding the individual's aggressiveness, enthusiasm, and vigor are hardly surprising. In addition, a statement merely comparing someone's age with that of another is insufficient to constitute direct evidence of discrimination. There was no evidence adduced that Biltgen thought of his father as being old. In fact, as Young readily admitted, the reason he believed the comment referred negatively to his age was because *his own children* thought of him as old. Based on this record, we conclude that the district court properly rejected Young's claim that he produced *direct* evidence of discrimination by *Biltgen.* The probative value of Biltgen's statements simply is too attenuated to be of legal significance in this case.

### C. *Pretext*

■ Assuming arguendo that Young established a prima facie case under *McDonnell Douglas,*[3] the burden then shifted to

---

**3.** Both Young and General Foods devote a significant portion of their briefs to the question of whether Young established a prima facie case

under *McDonnell Douglas.* It is undisputed that Young was discharged while a member of the protected class and replaced by someone less

General Foods to articulate a legitimate, non-discriminatory reason for Young's discharge. In rebuttal, the company produced overwhelming evidence that Young was terminated because of poor job performance. Young admits that his supervisors, beginning with Bell, formulated written objectives ("contracts") for the TSMs and discussed them with the TSMs in advance. Young also does not dispute Bell's 1981 evaluation comments critical of Young's budget figures, conscientiousness, and performance of administrative tasks. Biltgen several times asked Young to develop a new sales plan. Rather than doing so, however, Young continued to rely on past relationships for the most part in making sales. As a result, some of Young's customers were the only ones in the region not stocking certain products. In addition, Young concedes that, after being requested to do so, he failed to submit any merchandising ideas or conduct any business review presentations, forcing Biltgen to perform those tasks himself. Young's damaged merchandise expenses also were the highest in the region. Finally, statistical information contained in the written evaluations repeatedly showed Young's sales and business volume to be below that of the region average. Although Young disputes the accuracy of some of the figures, the majority of the information remains uncontested.

In his attempt to produce "significantly probative" evidence of pretext, Young states in his affidavit that his sales figures were good and his work performance was satisfactory. Young also states that his termination was due to age because he could not "imagine what expectations [he] did not achieve except possibly being a man of age 25 to 30." In addition, Young claims that some of the sales figures are inaccurate and that Biltgen's recomputation of one set of volume figures, as well as his offer of retirement, evidenced discriminatory intent. We do not believe this evidence to be sufficiently probative of pretext to withstand a motion for summary judgment.

"[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions." *Grigsby*, 821 F.2d at 597. Although Young contends that he performed his job satisfactorily at all times and was a victim of discrimination, he does not contest most of the objective negative statistical information contained in the written evaluations. For the numbers he does dispute, Young provides no link between the purported inaccuracy and age discrimination. Significantly, in one case, although Young disputes the accuracy of the *value* used, he

than 40 years old. However, the parties disagree over whether Young proved that he "was qualified to do the job." *See Buckley,* 758 F.2d at 1529 (prong (4)). In *Rosenfield v. Wellington Leisure Products, Inc.,* 827 F.2d 1493, 1495 n. 2 (11th Cir.1987), this court noted that "the *McDonnell Douglas* test has been modified in cases where a plaintiff was discharged from a previously held position (as opposed to failure to hire or to promote cases)" by deleting the prong requiring proof of qualification. According to the court, "[t]he reason for this modification is that in cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred." *Id.* Whether the employee was adequately performing his job would become an issue only if the employer articulated unsatisfactory performance as its reason for discharge. *See id.*

General Foods asserts that Young is not entitled to an inference of qualification because he became a TSM less than three years before he was fired. Young claims that, although he received a pay raise when his position was "upgraded" to that of a TSM, he continued performing basically the same functions he had been doing throughout his tenure with the company. However, because General Foods has asserted poor job performance as its reason for firing Young, we need not decide whether Young is entitled to an inference of qualification under *Rosenfield.* Instead,

[t]he focus of the inquiry [is] not a determination of whether [Young] was in fact performing his job adequately, but rather, whether there was sufficient evidence of unsatisfactory performance to be a legitimate concern of [General Foods and] whether this was the real reason for the termination and not a pretext for age discrimination.

*Halsell,* 683 F.2d at 292 (upholding directed verdict because of employer's extensive rebuttal evidence) (quoting *Douglas v. Anderson,* 656 F.2d 528, 533 n. 5 (9th Cir.1981)).

does not deny the "bottom line" information, that his volume contribution slipped during the covered time interval. In the other, Young admits that he does "not have the figures to prove [that Biltgen] was wrong." Although Young also has pointed to Biltgen's recomputation of certain figures in one written report, Young does not dispute that he was the only TSM in the region selling the new CRYSTAL LIGHT beverage. It is certainly understandable that a manager might delete those sales figures when comparing Young's performance against others not fortunate (or unfortunate) enough to be test-merchandising a new product. In this situation the fact that Young was treated differently is of little value in inferring pretext, because he was situated differently than the other TSMs, irrespective of age.

Finally, we believe that Biltgen's offer of retirement to Young is not probative of discriminatory intent in this case. Here there is no dispute that Biltgen decided to fire Young *before* offering him the alternative choice of retirement. If Young had been fired *after* having been requested to retire, the earlier retirement offer might in some cases allow an inference that age was a determinative factor in the termination. *See, e.g., Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 205 (5th Cir.1986). However, once the decision to fire Young had been made, Biltgen's offer, rather than suggesting pretext, tends to show a desire to provide Young with an opportunity to avoid the stigma associated with having been fired.

In sum, this is much like the case in *Grigsby,* 821 F.2d at 597:

> This is not a situation where, as [the plaintiff] contends, the district court impermissibly weighed the parties' evidence instead of looking for the existence of a genuine issue of fact. Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer.

*See also Mauter,* 825 F.2d at 1558; *Simmons v. McGuffey Nursing Home, Inc.,* 619 F.2d 369, 371 (5th Cir.1980).

The judgment of the district court is AFFIRMED.