**James Lee WOOD, Plaintiff,**

v.

**C. William VERITY, Secretary, United States Department of Commerce, and George Shultz, United States Secretary of State, Defendants.**

**No. 87–8596–CIV.**

United States District Court, S.D. Florida, N.D.

Dec. 20, 1989.

Edward W. Horan, David Paul Horan & Associates, P.A., Key West, Fla., for plaintiff.

Suzan Hill Ponzoli, Asst. U.S. Atty., U.S. Attorney's Office, Miami, Fla., for defendants.

## SUMMARY FINAL JUDGMENT

ZLOCH, District Judge.

THIS MATTER is before the Court upon the Federal Defendants' Motion For Summary Judgment (DE 24), and the Court has carefully considered said Motion, has reviewed the court file and is otherwise fully advised in the premises.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (11th Cir.1987). Although all justifiable inferences are to be drawn in favor of the non-moving party, *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), the moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof. *Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553; *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). The inquiry in granting summary judgment is the same as that for granting a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987). The Appellate Courts generally, therefore, will affirm the granting of summary judgment if on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12; *Young*, 840 F.2d at 828.

The Court notes that on ruling on the aforementioned Motion For Summary Judgment (DE 24), it has considered only those matters permitted by Rule 56(c), Fed. R.Civ.P., and not arguments, proffers or representations by counsel of record.

Plaintiff brings this action challenging an enforcement policy of the National Marine Fisheries Service (NMFS) against United States fishermen who fish in Bahamian waters and import or attempt to import fish taken illegally into the United States. These violations may be prosecuted civilly or criminally under the Lacey Act, 16 U.S. C.A. Sections 3371–78. The Lacey Act provides in part:

It is unlawful for any person—

\* \* \* \* \* \*

(2) to import, export, transport, sell, receive acquire or purchase in interstate or foreign commerce—

(A) any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any state or *in violation of any foreign law, . . .*

16 U.S.C.A. Section 3372 (West 1985) (emphasis added).

The "foreign law" enforced by the NMFS, the Bahamas' Fishery Resources (Jurisdiction and Conservation) Act, 1977 ("FRA") (DE 24, Exhibit I), prohibits foreign fishing in the Bahamian exclusive fishery zone without a valid Bahamian fishing permit. The FRA establishes a Bahamian exclusive fishery zone of 200 nautical miles seaward surrounding its territorial sea in which the Bahamas asserts exclusive authority and sovereign rights to conserve and manage the fishery resources. *See* Sections 2, 4, 5 and 6, FRA (DE 24, Exhibit 1). Section 11 of the FRA permits the Bahamian Governor–General to negotiate an agreement to shorten the boundaries of the exclusive fishery zone where the claimed Bahamas area conflicts with the exclusive fishery zone of a "neighboring state." This type of conflict exists in some waters between the Bahamas and the United States.

The United States also asserts an area of exclusive fishery management and sovereign rights over fish and other resources under the Magnuson Act, 16 U.S.C.A. Section 1801 *et seq.* This area, known as the Exclusive Economic Zone (EEZ) is defined as:

> [A] zone contiguous to the territorial sea, including zones contiguous to the territorial sea of the United States, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands (to the extent consistent with the Covenant and the United Nations Trusteeship Agreement), and United States overseas territories and possessions. The Exclusive Economic Zone extends to a distance 200 nautical miles from the baseline from which the breadth of the territorial sea is measured.

Proclamation No. 5030, 3 C.F.R. 22, 23 (March 10, 1983); *see also* 16 U.S.C.A. Section 1802(6) (West Supp.1989). The United States recognizes the EEZs of other coastal states in conformity with international law. Proclamation No. 5030, 3 C.F.R. at 23, Exhibit II. The Proclamation also recognizes the fishery resource jurisdictions of other nations consistent with international law as reflected in the United Nations Convention on the Law of the Sea. The Bahamas, as a signatory to the Convention, exercises its fishery management jurisdiction pursuant to the Convention, and this jurisdiction is recognized by the United States.

The United States has also provided for negotiations over its EEZ boundary conflicts:

> In cases where the maritime boundary with a neighboring State remains to be determined, the boundary of the Exclusive Economic Zone shall be determined by the United States and other State concerned in accordance with equitable principles.

Proclamation No. 5030, 3 C.F.R. at 23.

The United States and the Bahamas have not entered into a treaty definitely establishing the maritime boundary between them, nor have they entered into any international fishing agreement formally acknowledging their mutual Exclusive Economic Zones. The United States has declared that its EEZ will end at an equidistant line between the United States and the Bahamas in the area known as the Florida Straits. 42 Fed.Reg. 12, 937 (1977). However, significant disputes still exist as to other United States/Bahamas boundaries, particularly in the Blake Plateau, located off the coasts of Florida and Georgia.

The United States enforces the Lacey Act with respect to fish taken in those portions of the EEZ of the Bahamas that are recognized by the United States. *See United States v. Rioseco*, 845 F.2d 299, 300 & n. 1 (11th Cir.1988). The United States does not enforce Bahamian law with respect to fish taken in disputed areas. Because the United States claims jurisdiction over the disputed areas, the Lacey Act would not apply. Plaintiff admits that he has fished in an area known as Mantilla Shoal. This area is within the exclusive fishery zone claimed by the Bahamian government, and within the portion of the Bahamian EEZ that is recognized by the United States. Plaintiff does not claim to hold a valid Bahamian fishing permit.

Plaintiff requests in Count I of his Complaint that this Court determine the validity of the continued enforcement of Bahamian law pursuant to the Lacey Act concerning a fishery conservation zone not formally recognized by the United States. In Count II, Plaintiff seeks to compel the Secretary of State to carry out certain provisions of Section 1825 of the Magnuson Act relating to stalled treaty negotiations, alleging that resolution of the boundaries in a formal treaty will allow Plaintiff fishing rights in the subject waters. Plaintiff further alleges that the Bahamian exclusive fishery zone cannot be recognized by the United States because in establishing the zone, the Bahamas violated all three of the requirements in Section 1822(e), which provides:

(e) Nonrecognition

It is the sense of the Congress that the United States Government shall not recognize the claim of any foreign nation to an exclusive economic zone (or the equivalent) beyond such nation's territorial sea, to the extent that such sea is recognized by the United States, if such nation—

(1) fails to consider and take into account traditional fishing activity of fishing vessels of the United States;

(2) fails to recognize and accept that highly migratory species are to be managed by applicable international fishery agreements, whether or not such nation is a party to any such agreement; or

(3) imposes on fishing vessels of the United States any conditions or restrictions which are unrelated to fishery conservation and management.

16 U.S.C.A. Section 1822(e) (West Supp. 1989).

In their Motion For Summary Judgment (DE 24), Defendants counter these allegations by arguing that the entire case represents a non-justiciable political question. Alternatively, Defendants argue that even if this Court finds Plaintiff's issues nonpolitical, Section 1822(e), the "nonrecognition" provision of the Magnuson Act, is not a mandatory provision.

## I. Nonjusticiable Political Question

Plaintiff contends that the United States cannot enforce the Lacey Act for violations of Bahamian law, which requires a permit for fishing within the Bahamian EEZ, because Bahamian law is not a recognizable "foreign law" under Section 3372(a) of the Lacey Act. Plaintiff is thus asking this Court to determine whether the United States recognizes the fisheries jurisdiction of a foreign nation for purposes of enforcing the Lacey Act.

Count II seeks a mandamus or declaratory judgment to compel the Secretary of State to comply with 18 U.S.C.A. Section 1825 (West 1985). In accord with that statute, the Secretary of State may ask the Secretary of the Treasury to impose import prohibitions on the Bahamas as an impetus to stalled fishery agreement negotiations. Although these negotiations have been stalled for over 10 years, a determination that talks have reached impasse is, under the plain words of the statute, a decision to be made by the Secretary of State.

Because the decision of whether or not an impasse has been reached is solely in the discretion of the Secretary of State, the Court must first determine whether Plaintiff's case presents a "non-justiciable issue in which federal courts will not intervene." *Baker v. Carr*, 369 U.S. 186, 211–212, 82 S.Ct. 691, 706–707, 7 L.Ed.2d 663 (1962). The inquiries of the political question doctrine are as follows: (i) Does the issue involve resolution of questions committed by the text of the Constitution to a coordinate branch of Government? (ii) Would resolution of the question demand that a court move beyond areas of judicial expertise? (iii) Do prudential considerations counsel against judicial intervention? *Goldwater v. Carter*, 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979) (construing *Baker v. Carr*, 369 U.S. 186, 221, 82 S.Ct. 691, 712, 7 L.Ed.2d 663 (1962)).

Under this analysis, the first question to be addressed is whether there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department." *Baker*, 369 U.S. at 217, 82 S.Ct. at 710. The United States Constitution com-

mits treaty power to the executive branch of government. U.S. Const., Art. II, Section 2, cl. 2. Included in this treaty power is the power to recognize foreign sovereigns, and as a separate issue, its decrees, laws and acts. *The Maret*, 145 F.2d 431, 441 (3rd Cir.1944); *see also United States v. Pink*, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942); *cf. Oetjen v. Central Leather Co.*, 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726 (1918). The first branch of the political question tripartite analysis must then be answered in the affirmative, that is, the Constitution commits powers of foreign negotiation and recognition to the Executive Branch.

The second question of this threshold examination is whether there is a "lack of judicially discoverable and manageable standards for resolving" the issue. *Baker*, 369 U.S. at 217, 82 S.Ct. at 710. This must be the case at hand. It is impossible for this Court to make a decision compelling import prohibitions "without an initial policy determination of a kind clearly for nonjudicial discretion." *Id.* The Judicial Branch is ill-equipt to determine the sensitive aspects of foreign policy bearing upon international negotiations on fisheries matters (*see* DE 24, pg. 9), and may upset a delicate balance between the United States and the Bahamas with regard to a fisheries agreement by compelling the Secretary of State to act in compliance with 16 U.S.C.A. Section 1825. This Court is unaware of any details of the negotiations on such an agreement and, thus, lacks standards upon which to decide this issue. Therefore, the second branch of the analysis is also answered affirmatively.

The final question, closely related to the second, is whether there is a "need for unquestioning adherence to a political decision already made" to present a united front on the issue to avoid embarrassment to the government and to express respect for the executive branch's decision. *Baker*, 369 U.S. at 217, 82 S.Ct. at 710. Since the issue of imposition of import prohibitions to compel the finalization of a fisheries agreement is left solely within the discretion of the Secretary of State, the Court should not compel action. The statute ex-

ists to provide the executive with a means of leverage, if necessary, to move stalled negotiations or punish failure to negotiate in good faith. 16 U.S.C.A. Section 1825. Although the negotiations appear to have been at impasse for at least 10 years, the discretion to call the leverage into play is committed to the Secretary of State. *Cf.* R. Fisher & W. Ury, *Getting to Yes* (1981) (Law of the Sea negotiations was one of the most complex negotiations ever undertaken).

The United States Supreme Court has recognized for many years that "[T]he province of the court is, solely, to decide on the rights of individuals, not to inquire how the executive officers, perform duties in which they have discretion." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170, 2 L.Ed. 60 (1803). This Court must not compel discretionary decisions of the executive as they are decisions which "demand a single-voiced statement of the government's views." *Baker*, 369 U.S. at 211, 82 S.Ct. at 706–707. Without action from another branch, this Court cannot know that the negotiations have failed. Judicial interference could unbalance the talks. In fact, the judiciary must be wary not to set dangerous precedent as an inroad to becoming involved in issues which it cannot resolve. *Oetjen*, 246 U.S. at 302, 38 S.Ct. at 310–311. Thus, the third question of the tripartate is also answered affirmatively.

■ Clearly, then, compelling the Secretary of State to exercise his discretion in recommending to the Secretary of the Treasury to impose import prohibitions on the Bahamas is a non-justiciable political question representing an issue which is beyond judicial competence and, therefore, summary judgment is appropriate.

II. *Section 1822(e), "Nonrecognition," is not a mandatory provision*

■ Defendants argue in the alternative that even if this Court finds this case to be justiciable, Plaintiff's claim regarding the nonrecognition provision of the Magnuson Act is without merit because Section 1822(e) is not mandatory. Defendants assert that Section 1822(e) is an expression of congressional intent to provide guidance to

the executive department and does not require automatic compliance by the executive.

This issue was specifically addressed in a recent decision. *United States v. Shelhammer,* 681 F.Supp. 819 (S.D.Fla.1988). In *Shelhammer,* the defendants were charged with violating the Lacey Act for taking fish illegally from the Bahamian EEZ in violation of the Bahamian FRA. *Id.* at 819. In *Shelhammer* the Court held that the phrase "it is the sense of Congress" in Section 1822(e) was "precatory and solely intended to advise the various branches, agencies and departments of the United States government as to what factors Congress thinks should be considered in evaluating a claim of a foreign nation to an exclusive economic zone." *Id.* at 820. This Court agrees and follows the reasoning of *Shelhammer* in holding that Section 1822(e) is a nonmandatory provision. Furthermore, although no formal treaty exists between the United States and the Bahamas concerning their respective EEZ boundaries, the Eleventh Circuit recognizes the enforcement of the Lacey Act in areas where the two countries' EEZ boundaries do not conflict. *Rioseco,* 845 F.2d at 300 & n. 1.

Accordingly, this Court finds that Summary Judgment is appropriate because Plaintiff's case presents a nonjusticiable political question. Furthermore, the Nonrecognition provision of the Magnuson Act is not a mandatory provision and does not require automatic compliance by the executive department.

Therefore, it is hereby

ORDERED AND ADJUDGED as follows:

1. Federal Defendants Motion For Summary Judgment (DE 24) be and the same is hereby GRANTED; and

2. The above-styled cause be and the same is hereby DISMISSED.

DONE AND ORDERED.