Edward Donald MOODY, Plaintiff,

v.

The DEPARTMENT OF EDUCATION OF the STATE OF ALABAMA; Dr. Wayne Teague, in his official capacity as State Superintendent of Education; the Personnel Department of the State of Alabama; and Dr. Halcyon V. Ballard, in her official capacity as Director of State Personnel, Defendants.

Civ. A. No. 93–D–529–N.

United States District Court, M.D. Alabama, Northern Division.

March 13, 1995.

Charles Winston Sheehan, Jr. and Alvin T. Prestwood, Montgomery, AL, for plaintiff.

Richard N. Meadows, Ashley H. Hamlett, and Denise Boone Azar, Dept. of Educ., Montgomery, AL, for Dept. of Educ. and Teague.

Laveeda Morgan Battle, Birmingham, AL, for Personnel Dept. and Ballard.

### MEMORANDUM OPINION

DE MENT, District Judge.

This matter is now before the court on the defendant the Department of Education's motion for summary judgment, filed March 3, 1994, and on the defendant the Personnel Department's motion for summary judgment, filed February 14, 1995. The plaintiff, Edward Donald Moody, responded to the Department of Education's motion for summary judgment on March 28, 1994, and to the Personnel Department's motion for summary judgment on March 3, 1995. For the reasons set forth below, the motions are due to be granted

#### Jurisdiction

The court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331 and 1343, as the plaintiff's claims arise under 42 U.S.C. Section 1983, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to United States Constitution, and 29 U.S.C. Sections 621–634, the Age Discrimination in Employment Act of 1967.

#### Factual Background

The plaintiff, Edward Donald Moody, is presently 61 years of age. He was hired by the Alabama Department of Education on January 10, 1966. At that time, Moody held the position of Rehabilitation Counselor II. Moody remained in that position until he resigned from the Department of Education on November 13, 1967.

On November 11, 1971, Moody returned to the Department and resumed his former duties as a Rehabilitation Counselor II. Moody was promoted to the position of Rehabilitation Counselor III on October 11, 1972, and to the position of Rehabilitation Supervisor I[1] on May 7, 1975. On December 27, 1978, Moody was promoted to his present position as a Disability Determination Supervisor II. Despite having submitted several applications since that time for the position of Disability Determination Supervisor III, Moody has not been promoted to a higher supervisory level. Moody's most recent application, which he submitted in response to an August 19, 1992 job announcement, is the main focus of this lawsuit. Moody contends that this application was rejected because the defendants were biased against older employees. Moreover he argues that the defendants' biases permeated the procedures established for hiring and promoting employees.

Traditionally, when a state agency wishes to hire or promote persons for a particular job classification, the agency will notify the State Personnel Department, which in turn will publish a promotional examination announcement. Persons responding to a particular announcement are required to submit their applications directly to the Personnel Department. All of the applications are then set aside for grading. Based on these grades, the Personnel Department will select a certain number of applicants for a "register of eligibles." The register is a list of those persons who are deemed certified as eligible for promotion or hiring. Under state law, any person appearing on the list may be hired or promoted by the state agency's hiring authority. Section 36–26–17, Code of Alabama, (1975).[2]

As the foregoing suggests, the grade assigned to an applicant determines his or her ranking and whether he or she will appear on the register. An assigned grade is generally based on two criteria; an applicant's training and experience, and his or her service ratings over the preceding three years.

---

1. The title of this position was subsequently changed to Disability Determination Supervisor I.

2. There is no requirement that the person selected have the highest grade ranking on the register. All persons who are certified are deemed equally qualified.

The training and experience component measures an applicant's time on the job and "relevant" work experience. The inquiry into the applicant's relevant experience keeps this portion of the grading from being a simple question of seniority. Job experience is relevant only up to a point, after which an applicant is considered to have "topped out." Thus, with many state job classifications it is possible for an applicant to have the same training and experience score as someone who is several years his senior. Prior to the Disability Determination Division's 1992 job announcement, the training and experience component accounted for 80% of the total grade while the three year service rating component accounted for 20% of the grade. Those percentages were changed in 1992 at the suggestion of an independent management review team commissioned by the Division to study its promotion policies. Thereafter, the Division requested that the applicants' training and experience scores constitute 60% of their total grade, and that their three year service rating score constitute 40% of their grade. The Personnel Department agreed to the change with the understanding that the new percentages would apply to all of the job classifications within the Division. The new percentages were in effect during the 1992 Supervisor III promotions.

The service rating component is based on an average of the applicant's performance evaluations over a three year period. Evaluations are routinely made for all state employees. The evaluations are designed to quantify an employee's performance and ability in several different job-related areas. In 1990, the State Personnel Department made several changes to the Performance Evalua-

tion System, which included changes in the Performance Appraisal forms used by employee supervisors. The Personnel Department required all supervisors, including Moody, to receive extensive training regarding the system. The new system was in place during part of the three year period leading up to the 1992 Supervisor III job opening.

Prior to his 1992 application for the position of Disability Determination Supervisor III, Moody submitted applications for the same position on three different occasions. In each instance, Moody was among the number of applicants who were certified as eligible for promotion.[3] However, he was not selected for any of the positions.

In response to an August 19, 1992 promotion announcement, Moody submitted the application referred to in his complaint. On November 3, 1992, the State Personnel Department certified a list of eight persons eligible for promotion to the two positions. Moody was included in that list and was ranked seventh out of eight persons. Again, the Division did not select him for either of the positions. The persons selected were James Methvin, who was ranked number one, and Steven Stewart, who was ranked number four. Methvin was 41 years old at the time of his promotion and had been employed with the Department of Education since 1974. Stewart was 43 years old at the time of his promotion and had been employed with the Department since 1973.

Moody alleges that he was denied a promotion to the position of Disability Determination Supervisor III because the promotion system developed by the Personnel Department and implemented by his own Division of

3. In 1984, Moody submitted an application for the position of Disability Determination Supervisor III to the State Personnel Department. The Personnel Department included his name on the Certificate of Eligibles. Moody was ranked number three out of four based on the grade assigned to him. The persons ranked number two (Ann Anderson) and four (William Smith) were selected by the Department of Education's Disability Determination Division.

In 1986, Moody submitted an application for the same position to the Personnel Department and again he was included on the Certificate of Eligibles. In this instance, Moody was ranked number two out of four persons listed on the Certificate of Eligibles. The person ranked number four (Jack Miller) was selected for the position by the Department of Education's Disability Determination Division.

In 1989, Moody submitted another application to the Personnel Department and again his name was among those included on the Certificate of Eligibles. Moody was ranked number one out of five. The persons ranked number four (Wanda Thomas) and five (Stephen Scruggs) were promoted to the position of Disability Determination Supervisor III.

the Education Department discriminated against applicants based on their age. Specifically, Moody argues that the following factors created this allegedly biased system:

1. That the new performance evaluation system put in place by the State Personnel Department in 1990 was less objective than the previous system, and that this lack of objectivity caused him to receive lower evaluation scores in some instances.

2. That the Disability Determination Division decided pursuant to an independent management review team recommendation to change the weight of an applicant's experience and training score from 80% of his or her overall grade to 60%.

3. That an applicant's experience and training score can "top out" after a certain number of years in the same position.

Moody asserts that the defendants' failure to promote him violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the Age Discrimination in Employment Act of 1967. The Defendants have responded to these charges by stating that Moody cannot make out a prima facie case of age discrimination under any legal theory. Furthermore, the defendants assert that even if Moody has made out a prima facie case, he has failed to put forth any evidence proving that the defendants' proffered reasons for the employment actions are pretextual.

## *SUMMARY JUDGMENT STANDARD*

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as

to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In further elaboration on the summary judgment standard, the Court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989). The court is to construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## *DISCUSSION*

### I. The ADEA Claim

29 U.S.C. Section 623 provides, in part: "It shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. Section 623(a)(1).

In all cases arising under the ADEA, the plaintiff bears the initial burden of establishing a prima facie case of age discrimination. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217 (11th Cir.1993); *Young v. General Foods Corp.,* 840 F.2d 825 (11th Cir.1988). "If a plaintiff establishes a prima facie case ... the employer must articulate a legitimate, nondiscriminatory rationale for the [decision not to promote]. If the employer

does so, the burden shifts back to the plaintiff to prove that the employer's asserted reason is pretextual." *Young,* 840 F.2d at 828.

"There are three methods by which a plaintiff may establish a prima facie case of age discrimination: by direct evidence of discriminatory intent; by meeting the test originally set out for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or by statistical proof of a pattern of discrimination." *Verbraeken v. Westinghouse Electric Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989).

■ In this case, Moody has attempted to meet his initial burden of establishing a prima facie case of age discrimination by using circumstantial evidence in accordance with the test set forth in *McDonnell Douglas.* Under that test, a prima facie case is established when a plaintiff makes the following showing: (1) that plaintiff was a member of a protected group; (2) that plaintiff was subject to adverse employment action, e.g. failure to promote; (3) that a person outside the protected group was promoted instead; and (4) that plaintiff was qualified for the position. *Ramsey v. Chrysler First, Inc.,* 861 F.2d 1541, 1543 (11th Cir.1988).

■ Under the first prong of the test, the plaintiff is required to prove that he is a member of a protected group. Here, the parties do not dispute that Moody is a member of a protected group for purposes of the ADEA. The protections of the ADEA clearly extend to those individuals who "are at least 40 years of age but less than 70 years of age." 29 U.S.C. Section 631(a). Moody's age of 60 satisfies the first element of the prima facie case.

■ The second prong of the test requires that Moody prove that he was subjected to adverse employment action. Moody offers his rejected promotion application as proof of this element. While that is certainly a sufficient allegation of adverse action as to the State Department of Education and its Superintendent, it is less clear that it alone will

suffice as to the Personnel Department and its Director. It appears from this court's review of the record that the Personnel Department's actions with respect to Moody's applications were entirely favorable. The Personnel Department included Moody's name in its register of eligibles every time he applied for a Supervisor III position. Moreover, it is undisputed that the Personnel Department had nothing to do with the final selection of persons named on the list it prepared. Essentially, all the Personnel Department did was to assign applicants grades in an objective manner based on facts and figures given to it by the Division of Disability Determination. Thus, the Personnel Department had no real opportunity under these limited circumstances to target Moody or anyone else for discriminatory treatment based on their age. While Moody has suggested that the Personnel Department subjected him to adverse treatment because of the new service evaluation system it developed, he has offered no proof that it was the system and not his own shortcomings on the job that caused him to receive lower performance scores on one or two occasions.[4] Therefore, because he has failed to show that he was subjected to adverse employment treatment by the State Personnel Department and its Director, Moody cannot make out a prima facie case under the ADEA against those defendants.

The third prong of Moody's prima facie case requires him to prove that applicants outside of the protected group were promoted in his stead. Here, the two persons promoted to the Supervisor III position were James Methvin, age 41, and Steven Stewart, age 43. At the time of their promotions, both men were themselves within the protected age group under the ADEA. However, that fact does not automatically cause Moody's case against the Department of Education and its Superintendent to fail.

"Unlike race and sex discrimination cases, the plaintiff in an age discrimination case need not necessarily prove that his replacement was outside the protected

---

4. Indeed, the materials submitted by the plaintiff indicate that he received exemplary performance scores from his Division in 1991 and 1993 under the Personnel Department's new appraisal system.

class, that is, under forty years of age. The plaintiff in an age discrimination case may establish a prima facie case merely by establishing that his replacement was younger than he, provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination."

*Corbin v. Southland Intern. Trucks*, 25 F.3d 1545 (11th Cir.1994).

In 1992, Methvin and Stewart were 19 and 17 years younger than Moody, respectively. However, there was little discrepancy between the applicants in the context of their time of employment with the Disability Determination Division and their time in supervisory level positions. Moody began his employment with the Division in 1971. By comparison, Methvin and Stewart started with the Division in 1973 and 1974 respectively. All three men were awarded the same score for their experience and training and Moody even admits in his deposition that his competitors were as qualified as he. As stated above, all of the persons included by the Personnel Department in their register of eligibles are considered qualified for the position they have applied for regardless of their numerical ranking. Nevertheless, Moody believes that his actual age was the deciding factor in the decision to promote other persons for the Supervisor III positions. While there is no direct evidence to support this contention, the age discrepancy does appear substantial enough to preclude a finding by this court that he has failed to meet his initial burden of making out a prima facie case under the ADEA.

As to the fourth prong of the *McDonnell Douglas* test, the parties all agree that Moody was among those persons deemed qualified for the position of Supervisor III.

■ As stated above, once a plaintiff has demonstrated a prima facie case, the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for its decision not to promote the plaintiff. The burden on the defendant is one of production, not of persuasion. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). When and if the defen-

dants proffer a legitimate, non-discriminatory reason for their actions, the burden of production then shifts back to the plaintiff to demonstrate that the defendants' proffered reason is pretextual. *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir.1989). "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." [emphasis in original], *Hicks*, —— U.S. at ——, 113 S.Ct. at 2747. The plaintiff's burden goes beyond merely establishing that the reasons offered by the defendants for their decision were not worthy of belief. The plaintiff is required to affirmatively prove by a preponderance of the evidence that discrimination did in fact occur. *Id.* at ——, 113 S.Ct. at 2751.

In this case, Moody does not challenge the promotion of Methvin and Stewart on the basis of their individual qualifications. Rather, Moody contends that he was subjected to age discrimination by a promotion system which by its very nature takes age into account. The nature of this allegation necessarily limits the type of response that is due from the defendants. Thus, the defendants' explanations are directed to its promotion system and the court finds that the following is an accurate summary of the defendant's response:

1. The Division of Disability Determination was directed by the State Personnel Department in 1990 to utilize the new Performance Evaluation System in grading the performance of their employees. Every State Department was required to do so. The system was developed over several years and all supervisors, including Moody, were trained in its use. The system does not penalize anyone on the basis of their age, sex, race, or ethnicity.

2. The slight dip in Moody's performance evaluation scores during 1990 and 1992 were caused by his own shortcomings on the job and not because the evaluation system was more subjective than the previous system.

3. The Disability Determination Division asked the Personnel Department to change the weight of an applicant's experience and training score from 80% of his or her overall

grade to 60% following a study conducted by an independent management review team. The management review team made its recommendation based on its concern that the Division's overwhelming emphasis on seniority would stifle the advancement of otherwise qualified minority workers. Rodney Taylor, then Acting Director for the Division of Disability Determination, requested the change based on this recommendation. Taylor kept the training and experience component at 60% to maintain an emphasis on seniority. Moreover, the plaintiff's overall grade for his 1992 application was not harmed by this percentage change because all of the persons included on the register had the same training and experience score.

4. The Personnel Department's policy is to "top out" an applicant's training and experience score after a certain number of years in the same position. The policy was created in recognition of the fact that at some point, every additional year in the same position does not produce an equivalent increase in productivity.

 In response to the defendants' asserted non-discriminatory reasons for its promotion policies, Moody argues that the reasons are a mere pretext for age discrimination. However, he offers no real evidence to support that theory other than his subjective belief that the stated promotion policies have an unfavorable impact on older employees. Such bare allegations fall far short of proving that the defendants' stated reasons were unworthy of credence or that discriminatory reasons more likely motivated their decisions. Accordingly, the Department of Education and its Superintendent are entitled to summary judgment as to this count.

## II. The Substantive Due Process Claim

 Moody also rests his claim of age discrimination on the substantive protection of the Due Process Clause as enforced by 42 U.S.C. Section 1983. The due process clause of the Fourteenth Amendment provides two distinct types of constitutional protection: substantive due process and procedural due process. *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). However, the protections afforded by the substantive component of the due process clause are generally not available in the context of public employment. In *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994), the Court of Appeals for the Eleventh Circuit held that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" *McKinney,* 20 F.3d at 1556 (citing *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985)). The court further held that substantive due process rights differ from procedural due process rights in the manner in which a violation of those rights occur.

> A violation of a substantive due process right, for instance, is complete when it occurs; hence, the availability *vel non* of an adequate post-deprivation state remedy is irrelevant. Because the right is "fundamental," no amount of process can justify its infringement. By contrast, a procedural due process violation is not complete "unless and until the State fails to provide due process." In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.

*Id.* at 1557.

 Assuming that Moody had a property right arising from his application for promotion (to which he has made no claim), that right would be protected solely by the procedural component of the Due Process Clause and not the substantive component. Having made no claim that the state has refused to provide a proper procedural remedy, Moody has no tenable Due Process claim at all.

## III. The Equal Protection Claim

Moody's final claim of age discrimination is brought pursuant to the Equal Protection Clause of the Fourteenth Amendment. Specifically, he contends that there is no rational basis for the defendants' decisions regarding

their promotion policies. Here again, the defendants are entitled to summary judgment.

In cases where a classification burdens neither a suspect group nor a fundamental interest, "courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). In fact, the Supreme Court has declared that an age-related classification will not be overturned unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [it] can only conclude that the government's actions were irrational." *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979).

In this case, Moody has offered no evidence that would suggest that the defendant's employment policies or decisions amounted to an age based classification for purposes of the Equal Protection Clause. Nor does the court find anything in its review of the materials submitted by the parties that would indicate that the two departments intended by their policies to subject different groups to the kind of "varying treatment" addressed by the *Bradley* Court. Therefore, this court finds that the plaintiff's claim is not cognizable under the Equal Protection Clause.

### Conclusion

In sum, the defendants' respective motions for summary judgment are due to be granted. A judgment in accordance with this memorandum opinion shall be entered separately.