**Sharon LESLIE, Plaintiff,**

v.

**UNITED TECHNOLOGIES CORPORATION d/b/a Pratt & Whitney, a foreign corporation, Defendant.**

**No. 97–8212–CIV.**

United States District Court,
S.D. Florida.

Dec. 16, 1998.

---

Isidro M. Garcia, Garcia Elkins & Carbonell, West Palm Beach, FL, for plaintiff.

Allen Roy Tomlinson, Charles L. Howard, Jones Foster Johnston & Stubbs, Fl, Justus Webb Reid, David Lawrence Ferguson, Reid Metzger & Associates, West Palm Beach, FL, Carmen Maria Rodriguez, Miami FL, for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GOLD, District Judge.

THIS CAUSE is before the Court upon Defendant, Pratt & Whitney's Motion for Summary Judgment [D.E. # 78]. Plaintiff, Sharon Leslie ("Plaintiff"), brought this suit alleging racial discrimination in violation of Title VII, codified as amended at 42 U.S.C. §§ 2000e, *et seq.,* and 42 U.S.C. § 1981. Defendant, Pratt & Whitney ("Defendant") has moved for summary judgment on all claims alleged by Plaintiff in her Complaint. Defendant's motion is predicated on grounds that: (1) Plaintiff's Title VII claims are time-barred; (2) Plaintiff has failed to establish a claim of hostile environment racial discrimination; (3) Plaintiff has failed to establish a prima facie case of constructive discharge; (4) Plaintiff has not established that she was a victim of disparate treatment; and that Plaintiff's § 1981 claim for racial discrimination fails for the same reasons as her claims brought pursuant to Title VII.

Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331, for claims arising under federal law.[1] After careful consideration of the parties' arguments, the

---

1. Upon submitting her Charge of Discrimination to the EEOC, Plaintiff checked the box requesting her charge be dual-filed with the Florida Commission on Human Relations. However, Plaintiff's Complaint does not include a claim under the Florida Civil Rights Act of 1992, §§ 760.01, *et seq.* Therefore, it is unnecessary for the Court to invoke pendent jurisdiction pursuant to 28 U.S.C. § 1367.

relevant case law, and the record as a whole, this Court concludes that Defendant's Motion for Summary Judgment should be denied.

## I. Factual and Procedural Background

Plaintiff's claims arise out of her employment with Defendant as a senior accounting clerk. The present action was initiated by filing a two-count Complaint on March 26, 1997. Count I alleges disparate treatment and hostile environment racial discrimination in violation of Title VII, and also states a claim of constructive discharge.[2] Count II sets forth a claim of racial discrimination pursuant to 42 U.S.C. § 1981.[3] In support of her claims, Plaintiff alleges that Defendant subjected her to racial discrimination that was so severe and pervasive as to create a hostile working environment. When hostility of the environment reached an intolerable level that affected Plaintiff's health, she was forced to take a medical leave of absence. Plaintiff contends this result is tantamount to a constructive discharge.

Plaintiff's employment history reveals that from April 1, 1985 through August 25, 1995, she was employed as a senior accounting clerk in Defendant's Credit and Collections Department. Plaintiff was the only black staff member within her immediate work group of six employees. Within six months of commencing her employment, Plaintiff's salary was increased to the highest pay rate available for her position.

From the inception of her employment until July 1994, Plaintiff was under the immediate supervision of Rod Phillips. When Mr. Phillips resigned for health reasons, Joseph Saide, a white male, became Plaintiff's supervisor. Immediately upon Saide assuming a supervisory role over Plaintiff, she was subjected to discrimination and harassment.

From July 1994 until her leave in August 1995, Saide made several racially derogatory comments to Plaintiff. Some of these comments were blatantly discriminatory. Other comments connote stigmatic stereotyping. As the only black employee, Plaintiff perceived that these comments were directed solely at her. Plaintiff felt singled out and offended by Saide's conduct.

In addition to the racially prejudicial comments, Plaintiff was disparaged and disparately treated in other ways. Saide's demeanor toward Plaintiff was more hostile than his demeanor directed at Plaintiff's white co-workers. Unlike her fellow co-workers, Plaintiff was harshly interrogated when she requested time off for medical reasons. In sum, Saide acted in an overall abrasive, abrupt manner toward Plaintiff.

The disparate treatment Plaintiff encountered was further demonstrated when Defendant withheld a one thousand dollar appreciation bonus from Plaintiff, while it distributed bonuses to other members of her department. Although the appreciation bonus was distributed after Plaintiff took a voluntary medical leave of absence, entitlement to the bonus was based on work performed prior to her leave.

Plaintiff also complains of racially hostile treatment by her non-supervisory co-workers. Plaintiff claims that Defendant was made aware of the problems she was experiencing and the denial of her appreciation

---

**2.** Count I also included a Title VII retaliation claim. However, Judge Ryskamp, who formerly presided over this case, dismissed the claim, finding that it was time-barred because Plaintiff failed to include the claim in her charge filed with the EEOC. On Plaintiff's motion to reinstate the retaliation claim, this Court affirmed the reasoning and holding of Judge Ryskamp, and further denied reinstatement based on the recent Eleventh Circuit's opinion in *Clover v. Total System Servs., Inc.,*

157 F.3d 824, 829 (11th Cir.1998) (Title VII's anti-retaliation relief is triggered only when the retaliation is incident to participation in an EEOC investigation, and is not available for complaints made to employers and participation in in-house investigations).

**3.** Plaintiff included a claim of gender discrimination in Count II. This claim, upon Plaintiff's agreement, was dismissed, since § 1981 applies only to race-based discrimination.

bonus. Although Defendant conducted an investigation, Plaintiff found Defendant's response unsatisfactory. Unable to tolerate the abusive environment created by Defendant, which caused Plaintiff to experience anxiety attacks and cardiac irregularity, she took a medical leave of absence on August 25, 1995.[4]

On May 1, 1996, Plaintiff submitted a Charge of Discrimination to the EEOC. In her charge, Plaintiff stated that the racial discrimination she endured while employed with Defendant created an intimidating, hostile, and offensive work environment which altered the terms and conditions of her employment. Plaintiff identifies Defendant's denial of the appreciation bonus and interference with her career advancement opportunities as the adverse employment actions to which she was subjected. She did not provide detail of any offensive conduct engaged in by Saide or her co-workers. However, Plaintiff stated that Defendant did not intervene to alleviate the abusive treatment.

Upon the expiration of the statutory administrative investigation period, the EEOC issued a Notice of Right to Sue on January 13, 1997. Plaintiff filed her civil Complaint in federal court within Title VII's ninety-day limitations period.

Throughout the course of this litigation, the parties have conducted extensive discovery and have created a voluminous record. Nevertheless, Defendant contends that no genuine issue of material fact exists, and therefore, seeks to summarily dismiss the suit. Defendant requests dismissal of Count I, urging that Plaintiff has not only failed to meet her burden of establishing prima facie cases of hostile environment, constructive discharge, and disparate treatment, but that Plaintiff's claims under Title VII are time-barred, since the underlying conduct occurred prior to the 300–day limitations period. Although the limitations period for Plaintiff's § 1981 claim is not an issue, Defendant asks the Court to dismiss Count II be-cause Plaintiff has not established Defendant's intent to discriminate or that her working environment was so severely and pervasively hostile as to be actionable.

The Court finds that Plaintiff has raised sufficient factual issues to preclude judgment as a matter of law on the remaining claims. Thus, the Court declines to grant summary judgment in favor of Defendant.

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is a legal element of a claim under the applicable substantive law and one which might *affect* the outcome of the suit under the governing law. *Id.* A material fact is "genuine" if "the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Id.*

A plaintiff cannot defeat a defendant's properly supported motion for summary judgment without an affirmative presentation of specific facts showing a genuine issue, and may not merely rely on the general allegations of the pleadings. *Id.* A mere scintilla of evidence is insufficient to defeat a motion for summary judgment:

> [I]n every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Id.* at 251, 106 S.Ct. at 2511. In reviewing a motion for summary judgment the court focuses on "whether the evidence presents

---

4. While on disability leave, Plaintiff receives payments equal to a percentage of her full-time salary which she was collecting prior to August 25, 1995.

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997) (quoting *Anderson, supra* ).

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court established a two-prong framework of shifting burdens which must be employed by federal courts in determining whether there exists a genuine issue precluding summary judgment. This framework places the initial burden on the moving party to establish the absence of a genuine issue as to any material fact. *Tyson Foods, Inc.,* 121 F.3d at 646 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). The moving party may discharge this burden by " 'showing'—that is, pointing out' to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. In deciding whether the burden has been satisfied, the Court must view the evidence and all reasonable inferences arising from it in the light most favorable to the nonmoving party. *Tyson Foods, Inc.,* 121 F.3d at 646 (citing *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608).

Once the movant has satisfied its burden, the burden shifts to the nonmoving party to present evidence sufficient to make a "showing that the jury could reasonably find for that party." *Allen,* 121 F.3d at 646 (citations omitted). Facts asserted by the party opposing a summary judgment must be regarded as true if supported by affidavit or other evidentiary material. *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 595 (5th Cir. 1981). However, where the nonmoving party bears the burden of proving an element essential to that party's case, summary judgment is warranted when the party fails to make a showing sufficient to establish the essential element. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Eleventh Circuit commented on the nonmovant's burden:

> For issues on which the non-movant would bear the burden of proof at trial, the means of rebuttal available to the non-movant vary depending on whether the movant put on evidence affirmatively negating the material fact or instead demonstrating an absence of evidence on the issue. Where the movant did the former, then the non-movant must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated. Where the movant did the latter, the non-movant must respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. *Celotex,* 477 U.S. at 332, 106 S.Ct. at 2557 (Brennan, J., dissenting). Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116–17 (11th Cir.1993).

The mere establishment of a prima facie case of discrimination does not foreclose the possibility of summary judgment in favor of the employer. *See Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir.1988). Presentation of a prima facie case creates a rebuttable presumption of discrimination, but does not alone establish a genuine issue of material fact sufficient to go to the jury. *See id.* at 829. Since it is Plaintiff's burden to establish pretext, "[she] must present 'significantly probative' evidence on the issue to avoid summary judgment." *Id.*

## III. Discussion and Analysis

Plaintiff's claims of race discrimination and hostile environment pursuant to Title VII primarily derive from racially offensive remarks made by her immediate supervisor and Defendant's failure to adequately redress her complaints of discrimination and harassment. Plaintiff alleges that, having been put on notice that she was the victim of racially biased comments and treatment by her supervisor, Joseph Saide ("Saide"), Defendant should have disciplined or terminated him, or otherwise halted the hostility directed towards her due to her race. The combined acts of Saide and Defendant aggravated Plaintiff's pre-existing physical infirmities and caused her to take a medical leave of absence.

Defendant argues that nothing said or done by Saide rose to the level of creating a hostile environment. Moreover, Defendant contends that it took steps to mediate and correct the objectionable behavior, and therefore, Defendant cannot be vicariously liable for Saide's acts. The Court does not agree with Defendant's assessment.

### A. Plaintiff's Claims Under Title VII

█ Title VII prohibits discrimination in hiring, discharge, and promotion in employment on the basis of race, religion, sex, or national origin. 42 U.S.C. Sec. 2000e–2(a)(1). Title VII is intended to eradicate not only economic and tangible discrimination, but the entire spectrum of disparate treatment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). This includes more than " 'terms' and 'conditions' in the narrow contractual sense." *Id.*

█ It is clear, however, that not all employment actions are actionable under Title VII. The demanding standards for judging discriminatory working environments were designed to prevent Title VII from becoming a "general civility code." *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). Applied judiciously, these standards "filter out complaints attacking 'ordinary tribulations of the workplace.' " *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998) (quoting source omitted). Thus, the "mere utterance of [an insult] which engenders offensive feelings in an employee" is insufficient to support a violation of Title VII. *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971).

### 1. *Plaintiff's Claim of Race Discrimination*

Count I of the Complaint alleges that Plaintiff, the only black employee in her department, was subjected to disparate treatment and a hostile work environment. Plaintiff contends that the hostility was instigated by her supervisor, Saide, with whom Plaintiff had daily interaction. Plaintiff claims that Saide made racially offensive comments to Plaintiff, in private and in front of Plaintiff's co-workers. Plaintiff also claims that Saide disciplined Plaintiff more harshly than her co-workers, was physically intimidating towards her, rebuked her requests for medical absences, and demeaned and disparaged Plaintiff. According to Plaintiff, she was subjected to this abusive treatment on account of her race.

Defendant challenges Plaintiff's allegations. Defendant contends that Plaintiff has not established a prima facie case of race discrimination or hostile environment, and that such claims are, nevertheless, time-barred, since the conduct of which Plaintiff complained occurred prior to 300–day statutory filing deadline.

### a. *Establishing a Prima Facie Case of Discrimination Under Title VII*

Discrimination claims brought pursuant to Title VII place the initial burden on Plaintiff to prove that Defendant discriminated against her on the basis of her race. This burden requires Plaintiff to establish a prima facie case of discrimination. *Carter v. Three Springs Residential Treat-*

**1340**

*ment,* 132 F.3d 635, 643 (11th Cir.1998). A prima facie case of race discrimination is established by showing that: (1) Plaintiff belongs to a racial minority; (2) she was subjected to an adverse employment action; (3) Plaintiff was treated less favorably than similarly situated employees who were not members of the minority class; and (4) that Plaintiff was otherwise qualified for the position. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997).

The elements necessary to establish a prima facie case are dictated by the employment practice at issue. Here, to prevail on her Title VII claim, Plaintiff must not only show membership in a protected class, which membership was a motivating factor in the employment practice applied, she must also show that Defendant treated similarly situated employees outside of the protected class more favorably. *See Coutu v. Martin County Bd. of Comm'rs,* 47 F.3d 1068, 1073 (11th Cir.1995).

■ A crucial ingredient in actions alleging discriminatory treatment by an employer based on conduct proscribed by Title VII, is proof of discriminatory motive. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 325 n. 5, 97 S.Ct. 1843, 1854 n. 5, 52 L.Ed.2d 396 (1977). In establishing unlawful motive under Title VII, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In this case, the issue is whether Defendant *intentionally* discriminated against Plaintiff on the basis of her race.

■ To establish a prima facie case of intentional discrimination, a plaintiff may rely on direct or circumstantial evidence. Therefore, for purposes of this motion, the Court must make a threshold determination whether the evidence produced by Plaintiff is direct or circumstantial evidence of discrimination.

The type of evidence before this Court, direct or circumstantial, dramatically affects the allocation of evidentiary burdens. If Plaintiff produces competent evidence of discriminatory intent, Defendant must prove by a preponderance of the evidence that the same employment decision would have been reached even absent the discriminatory motive. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989); *Smith v. Horner,* 839 F.2d 1530, 1536 (11th Cir.1988). If the evidence relied upon by Plaintiff is circumstantial, Defendant's burden on rebuttal is to produce a legitimate, nondiscriminatory reason for the challenged employment decision. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This burden is merely one of production, not persuasion. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773 (11th Cir.1982).

### i. *Direct Evidence of Discriminatory Intent*

■■ Direct evidence is that which, if believed, proves the existence of a fact in issue without inference or presumption. See *Burrell v. Board of Trustees of the Ga. Military College,* 125 F.3d 1390, 1393–94 (11th Cir.1997); *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 643 (11th Cir.1998) (citing *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir. 1997)). Generally, direct evidence relates to the actions, statements, or biases of the person making the challenged employment decision. *See Trotter v. Board of Trustees of the Univ. of Ala.,* 91 F.3d 1449, 1453–54 (11th Cir.1996). If, however, the evidence presented is, by inference, subject to more than one possible meaning, it is not direct evidence and must be considered circumstantial evidence. *Carter,* 132 F.3d at 643 (citing *Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1082–83 n. 2 (11th Cir.1996)).

■ In a discrimination case in which a plaintiff adduces direct evidence of dis-

crimination, the court initially must make a credibility finding as to whether or not the plaintiff's proffered direct evidence of discrimination is to be believed. *See Haynes v. W.C. Caye & Co., Inc.,* 52 F.3d 928, 931 (11th Cir.1995) (citing *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir.1990)). The Court also must make a finding of fact as to whether or not the decision maker "relied upon [unlawful] considerations in coming to its decision." *Price Waterhouse,* 490 U.S. at 242, 109 S.Ct. at 1786. In other words, the fact finder must determine whether "[plaintiff's protected status] played a motivating part in an employment decision." *Id.* at 244, 109 S.Ct. at 1787. If the Court both credits the direct evidence and finds that the evidence played a substantial role in the employment decision at issue, then Defendant can avoid liability only by proving that it would have made the same decision even if it had not allowed such discrimination to play a role. *Id.* at 243–46, 109 S.Ct. at 1786–88.

#### ii. *Circumstantial Evidence of Discriminatory Intent*

For cases alleging discriminatory intent based upon circumstantial evidence, courts adhere to the Supreme Court's burden-shifting analysis, set forth in *McDonnell Douglas, supra.* Pursuant to this framework, once a plaintiff establishes a prima facie case of discrimination, it is incumbent upon the defendant to rebut the plaintiff's claims of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action of which the plaintiff complains—a reason worthy of credence. *Carter,* 132 F.3d at 643. The defendant has the burden of production, and thus, does not have to persuade a court that it was actually motivated by the reason advanced. *Id.* Once the defendant satisfies this burden of production, in order to prevail upon her claims, the plaintiff must establish *both* that the proffered reason for the employment decision was false *and* that the real reason for the action was discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515–17, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993); *Is-*

enbergh v. Knight–Ridder Newspaper Sales, Inc., 97 F.3d 436, 441 (11th Cir. 1996). By so persuading the court, the plaintiff satisfies the required burden of demonstrating by a preponderance of the evidence that she has been the victim of intentional discrimination. *Carter,* 132 F.3d at 643. Applying these principles, the Court must initially examine the evidence in the record to determine whether it is direct or circumstantial.

#### b. *Plaintiff Has Presented Direct Evidence of Discriminatory Motive*

Defendant argues that, even assuming Plaintiff has established a prima facie case of race discrimination, Defendant has proffered legitimate non-discriminatory reasons for its actions. Thus, the burden shifted back to Plaintiff to prove Defendant's proffered reasons are mere pretext. According to Defendant, Plaintiff has not satisfied the third prong of the *McDonnell Douglas* test.

By presenting direct evidence of discrimination, Plaintiff may avoid the *McDonnell Douglas* burden-shifting analysis. *See Holifield,* 115 F.3d at 1561–62. "Where the non-movant presents direct evidence that, if believed by a jury, would be sufficient to win at trial, summary judgment is not appropriate *even where the movant presents conflicting evidence.*" *See Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996) (emphasis added). In the instant case, this type of evidence would relate to actions or statements of Defendant which reflect a discriminatory attitude correlating to the discrimination of which Plaintiff complains. *See Carter,* 132 F.3d at 641 (quoting source omitted).

The record contains direct evidence of race-based disparate treatment. Plaintiff has identified specific comments which the Court considers to be examples of direct evidence supporting Plaintiff's Title VII claim of discrimination. For instance, Saide questioned Plaintiff about the color of her blood, and whether, as a woman of

color, Plaintiff's skin was prone to suntanning. Saide also suggested that, instead of a buying the doll Plaintiff's white co-worker was getting for her own grandchild, Plaintiff should give her granddaughter cleaning implements. In commenting on the birth of Plaintiff's relative, Saide asked Plaintiff whether the child was born white.

The most significant statement in support of Plaintiff's disparate treatment claim is Saide's own admission that he was treating Plaintiff disparately with regard to discipline and work assignments because of her race. Specifically, Saide confided that in response to the complaints of co-workers that Plaintiff received preferential treatment, he "went too far in the opposite direction," and thereby, treated her less favorably. He added that this differential treatment was due to the fact that Plaintiff is black.[5]

Defendant tries to minimize the effect of this damaging direct evidence. Defendant argues that, even assuming all the statements were made, in the aggregate they do not amount to a hostile environment so severe and pervasive as to affect the terms and conditions of Plaintiff's employment. Defendant avers that Plaintiff's subjective perception of these remarks as offensive is insufficient to substantiate her discrimination claim; rather, the conduct must also be objectively offensive. Although Defendant has identified the correct standard, it has misapplied it to the totality of the circumstances encompassed by the record.

A hostile environment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). To be actionable, an objectionable environment must be both objectively offensive—one that a reasonable person would find hostile or abusive—*and* subjectively offensive—one that the victim in fact did perceive to be so. *See Harris*, 510 U.S. at 21–22, 114 S.Ct. at 370–71. However, whether a reasonable person would find the challenged conduct has interfered with an employee's working conditions and "psychological well-being" is determined in light of the record as a whole and the totality of the circumstances. *See id.* at 23, 114 S.Ct. at 371; *see also Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995). Thus, the Court must determine whether a reasonable person, in Plaintiff's position, would perceive her environment as abusive. This determination must consider Plaintiff's compromised physical condition, of which Defendant was aware.

By including this factor, when viewing the record as a whole, the Court concludes that Saide's harassment meets the severe or pervasive standard under both the subjective and objective prongs of the *Harris* test. It is clear that Plaintiff subjectively perceived the environment as hostile because she sought medical treatment for stress and anxiety. She also sought coun-

5. Courts have found that less explicit statements constitute direct evidence of discrimination. *See, e.g., Alexis v. McDonald's*, 67 F.3d 341, 348 (1st Cir.1995) (finding that arresting officer's statement that "You people have no rights" was not too general to constitute direct evidence of race discrimination); *Haynes v. W.C. Caye & Co., Inc.*, 52 F.3d 928, 930 (11th Cir.1995) (holding that a statement questioning whether a "sweet little old lady could get tough enough" to do the job constituted direct evidence of age and gender discrimination); *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir.1990) (holding that a manager's statement that "you people can't do a *** thing right" constituted direct evidence of race discrimination); *Walters v. City of Atlanta*, 803 F.2d 1135, 1141–42 (11th Cir.1986) (holding that a memorandum requesting a new list of candidates because the "current register ... does not include any minority group representation" constituted direct evidence of discrimination); *Thompkins v. Morris Brown College*, 752 F.2d 558, 563 (11th Cir.1985) (holding that a college president's statement that he saw no reason for a woman to have a second job and that males had families and needs that the female plaintiff did not, constituted direct evidence of gender discrimination).

seling through Defendant's human re-source department. Finally, in August 1995, Plaintiff was forced to take a leave of absence to be hospitalized for her medical ailments, which she alleges were caused by her stressful work environment.

As to the objective part of the test, Plaintiff has sufficiently set forth facts which show an environment that a reasonable person would find racially abusive. Applying the factors enumerated in *Harris*, the harassment, as alleged, was frequent, severe, and humiliating. During the time that Plaintiff was under the direct supervision of Saide, Plaintiff recounted numerous instances in which she was the subject of verbal abuse, during which Saide lost his temper, slammed his hand down on Plaintiff's desk, and angrily raised his voice to Plaintiff while in very close, and intimidating, proximity.

The Court finds that the frequency and severity of the harassment is extensive enough to support a claim for racial harassment, and to establish that the harassment was severe and humiliating. Thus, the Court concludes that Plaintiff has made an actionable claim for racial harassment under Title VII. Although Defendant contends that Saide supported a promotion for Plaintiff and that some of the adverse conduct claimed by Plaintiff was justified due to her absenteeism, this is merely relevant to determining whether race was a motivating factor in Saide's treatment of Plaintiff. This, however, is a question of fact for the jury. And, it is more than conceivable that a reasonable juror might conclude that a person with high blood pressure and cardiac problems would find that Saide's continuous barrage of race-based comments created an abusive environment that interfered with Plaintiff's working conditions. Thus, the Court finds that the harassment was sufficiently hostile and pervasive to defeat summary judgment.

Based on the foregoing, Plaintiff has presented a sufficient amount of evidence which the Court would classify as direct evidence of racial discrimination. In light of the offensive nature of these statements, Defendant's assertion that no direct evidence of discriminatory motive exists is simply untenable. Saide's statement that he was intentionally treating Plaintiff differently, and that he was doing so because of her race, links the cause to the effect of the action. Moreover, as Plaintiff's immediate supervisor, Saide was in a position to substantially impact Plaintiff's performance evaluations and opportunities, and could thereby alter the terms and conditions of Plaintiff's employment. *See Trotter*, 91 F.3d at 1453–54. Thus, there is no other reasonable interpretation than that the statement constitutes direct evidence of race discrimination.

The Court concludes that Plaintiff has presented sufficient direct evidence to create a question of fact as to whether she was discriminated against. Accordingly, it is unnecessary to address her discrimination claim under the *McDonnell Douglas* framework and whether she has presented evidence of pretext. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1191 (11th Cir.1997).[6]

### 2. Plaintiff's Title VII Claims Are Not Time–Barred

Defendant next contends that the conduct and statements which led Plaintiff to recognize she had a discrimination claim occurred outside of the 300–day limitations period for filing her EEOC charge. According to Defendant, this time-bar forecloses Plaintiff's Title VII claims.

In response, Plaintiff argues that the 300–day filing requirement is not jurisdictional, and can be avoided pursuant to equitable principles. Plaintiff urges that, although some discriminatory conduct predated the limitations period, it also extended into the statutory filing period.

**6.** Alternatively, even if the identified statement does not amount to direct evidence, since it shows some racial animus, it is significant evidence of pretext to satisfy the third-prong of the *McDonnell Douglas* test. *See Smith*, 839 F.2d at 1536–37.

Therefore, Plaintiff's claims should survive preclusion under the continuing violations doctrine.

 It is true that there are certain exceptions to the statute of limitations made in Title VII cases. These occur where there is a pattern of discrimination by the employer that can be accurately termed a "continuing violation." Where this doctrine applies, actions that took place outside of the limitations period may be included in Plaintiff's claims. *See Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 449 (11th Cir.1993). The theory is properly applied only where some continuing, re-occurring wrong results from a continuously applied pattern of discrimination. *See Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 797 (11th Cir.1992). The critical distinction in the continuing violation analysis is whether the substance of Plaintiff's Complaint results from "the present consequence of a one time violation, which does not extend the limitations period, [or] the continuation of that violation into the present, which does." *Knight v. Columbus, Ga.,* 19 F.3d 579, 580–81 (11th Cir.1994).

The Eleventh Circuit has held that so long as the charge of discrimination is timely as to the last occurrence of discrimination, a plaintiff is relieved of the burden that all actionable conduct must have occurred within the statutory period. *See Coon v. Georgia Pacific Corp.,* 829 F.2d 1563, 1570 (11th Cir.1987) (applying the doctrine to the 180–day limitations period of the ADEA). The doctrine has been found appropriately applicable to hostile work environment claims, where the claim at issue is not based on discrete acts, but is based on an ongoing pattern of offensive conduct. *See, e.g., Patterson v. Augat Wiring Systems, Inc.,* 944 F.Supp. 1509, 1517 (M.D.Ala.1996) (applying continuing violation analysis to a hostile work environment claim).

 This is precisely the situation presented in the case at bar. Plaintiff's claim involves alleged violations from as early as 1994. Those alleged violations continued through August 1995, well within the 300–day statute of limitations period. Consequently, the charge was timely filed as of the final occurrence involving Defendant's failure to rectify Plaintiff's hostile environment. Applying the principles of the continuing violations doctrine to the facts of this case, it is readily apparent that the doctrine precludes Defendant's assertion that Plaintiff's Title VII claim is time-barred.

### 3. Plaintiff's Constructive Discharge Claim

 To successfully establish a claim of constructive discharge, Plaintiff must demonstrate "that [her] working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign." *Thomas v. Dillard Dep't Stores, Inc.,* 116 F.3d 1432, 1433–34 (11th Cir.1997). Unless the employer is given sufficient time to remedy the situation, constructive discharge will generally not be found to have occurred. *See Kilgore v. Thompson & Brock Mgmt., Inc.,* 93 F.3d 752, 754 (11th Cir.1996).

 The evidence already deemed sufficient to enable a reasonable person to find that Plaintiff's working conditions were severely and pervasively hostile, also supports her claim that her working environment became intolerable. Moreover, Plaintiff sought Defendant's intervention on several occasions, thereby giving Defendant "sufficient time to remedy the situation." *Kilgore,* 93 F.3d at 754. Unfortunately, through no fault of her own, Plaintiff's attempts were unsuccessful. Consequently, viewing the evidence in the light most favorable to Plaintiff, which the Court is required to do on summary judgment, there exists a genuine issue of material fact whether Plaintiff was constructively discharged by Defendant.

Because other evidence suggests that Plaintiff's absenteeism and health contributed to the adversity she experienced, the question remains open whether Plaintiff will ultimately meet her burden of per-

suading the trier of fact that she was constructively discharged, and whether the constructive discharge was the result of an abusive and hostile environment.[7] Thus, the Court concludes that reasonable jurors exercising impartial judgment might reach different conclusions on the viability of Plaintiff's claim of constructive discharge.

## B. Corporate Liability for the Acts of a Supervisor

Two recent Supreme Court pronouncements clarify the standards for courts to determine the extent to which employers are liable for the harassment perpetrated by supervisory personnel. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In revisiting the question of employer liability as it relates to harassment by supervisors, the Court reiterated that agency principles controlled the issue, and distinguished supervisor harassment that results in a tangible employment action from that which does not. *See Faragher*, 118 S.Ct. at 2292–93; *Burlington*, 118 S.Ct. at 2266–67. When a tangible employment action is taken, vicarious liability is always appropriate. *See Faragher*, 118 S.Ct. at 2291–92; *Burlington*, 118 S.Ct. at 2266–67. When no tangible adverse employment action is evident, the Court implemented a test:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any [racially] ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*See Faragher*, 118 S.Ct. at 2292–93; *Burlington*, 118 S.Ct. at 2271.

 A tangible employment action is one which "constitutes a significant change in employment status, such as hiring, different responsibilities, or a decision causing a significant change in benefits." *Burlington*, 118 S.Ct. at 2266–67. They are "the means by which the supervisor brings official power of the enterprise to bear on subordinates." *Id.* at 2269. The Eleventh Circuit has taken a strong stance on an employer's power to influence the working atmosphere of its employees. *See Coates v. Sundor Brands, Inc.*, 160 F.3d 688, 692–93 (11th Cir.1998). "When an employee's ability to perform his or her job is compromised by discriminatory acts ... and the employer knows it, it is the employer that has the ability, and therefore the responsibility, to address the problem, whether the harasser is a supervisor, a co-worker, a client, or a subordinate." *Id.* (citing *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1515 (11th Cir.1989)). Here, a tangible employment action was taken at least when Plaintiff

7. The Court notes that the cases in which the issue of constructive discharge has been addressed, the plaintiffs have been terminated or resigned. Here, Plaintiff is still considered an employee of Defendant, and is receiving disability pay. However, whether actual termination has occurred is determined in light of the particular circumstances of the controverted job action, *see Thomas*, 116 F.3d at 1434, and whether the employer deliberately took advantage of a known idiosyncratic vulnerability of the employee, such as Plaintiff's weakened physical condition. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886–87 (7th Cir.1998). Moreover, because Plaintiff was offered a transfer to another department, which would have removed her from Saide's abuse, there is a factual issue whether it was reasonable for Plaintiff to have refused the transfer, or conversely, whether a transfer would have denied Plaintiff seniority and other accrued benefits. These questions are beyond the province of this Court to determine as a matter of law.

was forced to take a medical leave of absence, causing her decrease in salary. Accordingly, applying the *Faragher/Burlington* standard, Defendant is liable for Saide's harassment.

Even assuming no tangible employment action against the employee can be found, an employer may still be vicariously liable if it cannot prove the affirmative defense required under *Faragher and Burlington. See Booker v. Budget Rent–A–Car Sys.*, 17 F.Supp.2d 735, 747 (M.D.Tenn.1998). Although Defendant may argue that it exercised reasonable care to correct and prevent racial harassment by implementing an anti-harassment policy and grievance process, Defendant has not proved by a preponderance of evidence that it exercised reasonable care to prevent the racial harassment of its agent. In fact, Defendant has not met its burden of proving that it reasonably and promptly corrected any of Plaintiff's complaints and concerns of racially motivated harassment.

To the contrary, the record reflects that while Plaintiff availed herself of these channels, Defendant did absolutely nothing to eliminate the abuse which permeated Plaintiff's working environment.[8] Plaintiff's extensive participation in Defendant's grievance process should have given Defendant sufficient notice that a situation involving potential racial harassment was present, and thus, the Court finds that Defendant's failure to take prompt remedial action prevents it from avoiding vicarious liability. *See id.*

The existence of a grievance process, alone, cannot negate Defendant's intent to discriminate, because "Congress directed the thrust of the [Civil Rights] Act to the *consequences* of employment practices, not simply the motivation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849,

854, 28 L.Ed.2d 158 (1971) (emphasis in original). Because Defendant was intimately aware of the hostile situation created by its agent, and knew of the adverse effect it had on Plaintiff's already compromised health, Defendant cannot escape from liability by merely adopting ineffective diversity and grievance programs. Based on this record, the Court is compelled to find that the totality of Defendant's conduct amounted to an unlawful employment practice prohibited by Title VII. Thus, Defendant is not entitled to summary judgment on Count I of the Complaint.

### C. Plaintiff's Discrimination Claim Under § 1981

Section 1981 covers claims for intentional racial discrimination in "the making, performance, modification, and termination of [employment] contracts." 42 U.S.C. § 1981(b). Like Title VII claims, a successful § 1981 claim requires proof of intentional discrimination. *See Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 949 (11th Cir.1991).

The legal elements of a § 1981 claim are identical to those of a Title VII disparate treatment claim. *See id.* Those elements are: (1) membership in a racial minority; (2) an intent to discriminate on the basis of race; and (3) discrimination concerning an activity enumerated in the statute. *See Baker v. McDonald's Corp.*, 686 F.Supp. 1474, 1481 (S.D.Fla.1987), *aff'd*, 865 F.2d 1272 (11th Cir.1988).

It is generally recognized that proof sufficient to sustain a claim under Title VII will also support a claim under § 1981 and vice versa. *See, e.g., General Bldg. Contractors Ass'n v. Pennsylvania,*

8. Plaintiff presented testimony of several human resource and diversity counselors, one counselor who met with Plaintiff weekly for several months. These witnesses all testified that Plaintiff told them of Saide's racially offensive conduct, abusive behavior, and disparate treatment. Although Defendant lent Plaintiff an ear for her grievances, it did not intervene, nor did it discipline Saide. All that was offered to Plaintiff was a transfer to another department, which she declined, since she liked her work, albeit not her supervisor. It will be for a jury to decide whether Defendant's attempt at remedial measures went far enough to exonerate it from liability for its acts and for the acts of its agent.

458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Brown,* 939 F.2d at 949; *Crawford v. Western Electric Co., Inc.,* 745 F.2d 1373, 1376 (11th Cir.1984). Therefore, analysis under one theory is usually determinative of the other claim. *See Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir.1985). Accordingly, for the reasons set forth with respect to Plaintiff's claims for disparate treatment in violation of Title VII, summary judgment in favor of Defendant is denied.

## IV. Conclusion

The Court's decision that Defendant cannot prevail as a matter of law at this stage of the proceedings does not mean that Plaintiff has proven her case. A reasonable jury could very well believe that Plaintiff was not subjected to a hostile environment and that Defendant's conduct was legally innocuous. Further, the jury may even believe that Plaintiff's refusal to transfer was unreasonable, or that her voluntary leave of absence does not constitute constructive discharge.

By this ruling, Plaintiff has only shown that a genuine issue of material fact exists with regard to Defendant's actions. Plaintiff's burden at trial will be much greater. To prevail, she must prove that Defendant intentionally discriminated and that its attempt at conciliation was deficient. She will, however, have that opportunity.

Based on the foregoing, it is accordingly

**ORDERED AND ADJUDGED** that Defendant, Pratt & Whitney's Motion for Summary Judgment [D.E. # 78] is DENIED. It is further

**ORDERED AND ADJUDGED** that Defendant, Pratt & Whitney's Motion to File Summary Judgment Memorandum of Law in Excess of Twenty Pages [D.E. # 77] is GRANTED *nunc pro tunc.*