Augusta **IDUOZE, Plaintiff,**

v.

**MCDONALD'S CORPORATION, Defendant.**

**No. 01–CV–3511–JTC.**

United States District Court, N.D. Georgia, Atlanta Division.

June 16, 2003.

Kathryn J. Jaconetti, Jaconetti & Associates, Atlanta, GA, for Levantis Erhueh.

Milton "Chip" Dale Rowan, Chip Rowan & Associates, Atlanta, GA, for Augusta Iduoze.

Lewis Traywick Duffie, Kelly D. Ludwick, Beth T. Paxton, Kenneth L. Dobkin, Hunton & Williams, Atlanta, GA, for McDonald's Corporation.

## *ORDER*

CAMP, District Judge.

The following motions are presently pending before the Court in this Americans with Disabilities Act (ADA) action: Defendant's Motion to Compel Complete

Responses [# 13–1], Defendant's Motion to Compel Complete Testimony of Leventis Erhueh [# 23–1], Defendant's Motion for Summary Judgment [# 27–1], Plaintiff's Motion to Extend Time to Respond [# 34–1], Plaintiff's Motion to File Brief in Excess [# 36–1] and Defendant's Motion to File Response to Plaintiff's Statement of Material Facts [# 41–1].

## I. Background

Plaintiff Augusta Idouze was hired by Defendant McDonald's Corporation in January of 2000 as a manager trainee and after receiving on-the-job training was placed in a second assistant manager position. *Def.'s Statement of Undisputed Material Facts (SMF) ¶ 2; Pl.'s Response to Def.'s SMF (Resp.) ¶ 2.* Around March of 2001, Plaintiff requested two consecutive weeks of vacation for a trip to Africa to visit an ill family member. *Id. at ¶ 29.* Operations Consultant Nyerere Ellis reminded Plaintiff of the policy that managers could take vacation only in one week increments. *Id.* After Plaintiff reiterated her request several times, Ellis told Plaintiff to speak with Sonji Thomas, the Operations Manager, if Plaintiff was not pleased with Ellis' response. *Id.* Though Thomas and Plaintiff disagree as to the amount of vacation ultimately approved, it is undisputed that Plaintiff had only two weeks of vacation, meaning at the very latest she should have returned to work on May 27, 2001. *Id. at ¶ 32.* Plaintiff was scheduled to work May 27 and 28, 2001, but did not report to work and, on May 29, 2001, reported to work fifteen minutes late. *Id. at ¶¶ 33, 36.* On May 30, 2001, Plaintiff did not report for work but claims to have taken this day as a "comp" day despite that it was not approved as such. *Id. at ¶ 38.*

On May 31, 2001, Plaintiff was treated at Northlake Hospital Emergency Room for fever, vomiting and dizziness. *Id. at ¶ 62.* On June 4, 2001, Plaintiff went to see Dr. Omonuwa because she suspected she may have contracted malaria while in Africa. *Id. at ¶ 67.* This diagnosis was not confirmed, but Dr. Omonuwa gave Plaintiff a note excusing her from work for one week, or in other words, until June 11, 2001. *Id. at ¶¶ 68, 69.* Plaintiff told Karin Lane, the Human Resources Consultant, that her doctor thought she might have malaria. *Id. at ¶ 70.* On June 11, 2001, Plaintiff went to the Dekalb Family Practice complaining of shortness of breath and lack of energy. *Id. at ¶ 75.* Dr. Corkran diagnosed Plaintiff with fatigue/malaise, sinusitis and gastreosophageal reflux disease and released her to return to work that day. *Id. at ¶ 76.* At this visit, Dr. Corkran told Plaintiff that she might want to take several tests to rule out a more serious condition, including an HIV test. *Id. at ¶ 77.* At some point after this visit, Plaintiff alleges that she telephoned Lane and informed her that one of her doctors suggested that she take an HIV test. *Id. at ¶ 85.*

Some time between June 11 and June 14, after this alleged phone call, Plaintiff asserts and Defendant disputes, that Plaintiff visited Defendant's Atlanta regional corporate office and provided Lane with a doctor's excuse for missing work and a doctor's note indicating she was to take an HIV test. *Id. at ¶ 90.* Plaintiff asserts that Lane asked Plaintiff whether she had taken the HIV test, to which Plaintiff responded no. *Id. at ¶ 93.* Plaintiff asserts that Lane then stated that it would "be in [plaintiff's] best interest to take the test for [her] own health and because [she] works around food", and further that she stated "[d]on't you think it is good to know what your status is for you to get medical help?" *Stephanie Erhueh Aff. ¶ 8, Plaintiff Dep. 284.* Lastly, Plaintiff asserts that Lane told Plaintiff she could not return to work until she had taken the HIV test. *Plaintiff Dep. 289.*

When Plaintiff returned to work on June 14, 2001, she was told to report to the Regional Office on the 19th of June for a meeting with Thomas. *Id. at ¶ 82.* On June 19, 2001, Thomas, Lane and Ellis met with Plaintiff and informed her that her employment with Defendant was terminated. *Id. at ¶ 54.* Plaintiff contends she was terminated in violation of the ADA because Defendant regarded her as being disabled in that it believed she was HIV positive or had contracted AIDS.

Defendant contends, however, that Plaintiff's termination had nothing to do with HIV or AIDS. It is undisputed that when Plaintiff failed to return to work on the 27th of May, Ellis initiated an investigation into Plaintiff's absence and sought the assistance of Lane in such investigation. *Id. at ¶ 39.* Ellis and Lane communicated the results of the investigation to Thomas. *Id. at ¶ 40.* Defendant asserts that at the first of June, based on the results of the above investigation, Thomas decided to terminate Plaintiff, but that he wanted to wait until after he returned from vacation to inform her personally. As such, Defendant contends that at the time the termination decision was made, Plaintiff had not even been told by her doctor that she should take an AIDS test.

Plaintiff does not have AIDS nor is she HIV positive. *Id. at ¶ 106.* Plaintiff never told anyone at McDonald's that she was HIV positive or that she had AIDS. *Id. at ¶ 107.*

Plaintiff brings this action asserting that Defendant violated the ADA when it terminated her employment because it regarded her as having HIV and/or AIDS. Defendant denies that it violated the ADA and moves the Court to grant summary judgment in its favor.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' ... and draw 'all justifiable inferences ... in his favor ....'" *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991). The court may not weigh conflicting evidence nor make credibility determinations. *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 919 (11th Cir.1993), *rh'g denied,* 16 F.3d 1233 (1994)(en banc).

As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the moving party's responsibility varies depending upon which party bears the burden of proof at trial on the issue in question.

For issues upon which the moving party bears the burden of proof at trial, the moving party must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of its claim on that legal issue. It must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. If the moving party makes such a showing, it is entitled to summary judgment unless the non-moving

party comes forward with significant, probative evidence demonstrating the existence of an issue of fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (quoting *Four Parcels*, 941 F.2d at 1437–38).

On the other hand, when the non-moving party bears the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim. Instead, the moving party may simply point out to the district court that there is an absence of evidence to support the non-moving party's case on the issue in question. *Id.* at 1115–16. Of course, the moving party may offer evidence to affirmatively negate a material fact upon which the non-movant has the burden and which is essential to its claim. In either case, the non-moving party may not rely upon allegations or denials in the pleadings, but instead must respond with sufficient evidence to withstand a directed verdict motion at trial. Fed.R.Civ.P. 56(e); *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (citing *Fitzpatrick*, 2 F.3d at 1116–17).

## III. Standard of Law for ADA Claim

The ADA prohibits employers from discriminating against qualified individuals with disabilities. *42 U.S.C. § 12112(a)*. Congress has defined "disability" as a(1) physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. *42 U.S.C. § 12102(2)*. Plaintiff claims that Defendant regarded her as having a disability, AIDS or HIV, that substantially limited one or more of her major life activities. She further claims that as a result, Defendant terminated her in violation of the ADA.

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as a result of his disability. *Gordon v. E.L. Hamm & Assoc.*, 100 F.3d 907, 910 (11th Cir.1996). To establish that Plaintiff is regarded as having a disability in order to satisfy the first prong of the above standard, Plaintiff must show that though she has no impairment she was treated by Defendant as having a substantially limiting impairment. 29 C.F.R. § 1614.203(a)(5).

## IV. Analysis

In support of its motion for summary judgment, Defendant asserts the following arguments: (1) Thomas made the termination decision and she did not regard Plaintiff as disabled as she was unaware of Plaintiff's doctor's suggestion regarding an AIDS test; (2) even if Lane were responsible for the termination decision, she did not regard Plaintiff as disabled.

### A. Decision Maker

Defendant asserts that Thomas made the decision to terminate Plaintiff before Thomas left for her vacation and therefore before Plaintiff told Lane about the possibility of taking an HIV test. As such, Defendant argues that Thomas could not have regarded Plaintiff as having a disability since at the time the termination decision was made, neither Thomas, nor anyone else, knew of the potential test. Because Thomas didn't regard Plaintiff as having a disability the first and third prong of the prima facie case are not satisfied. Defendant further asserts that even if the decision were not made until after Lane was made aware of Plaintiff's possible need for an HIV test, Thomas was never made aware of such. Plaintiff, on

the other hand, asserts that Lane was the actual decision maker and that she did not make the decision to terminate Plaintiff until after she learned that Plaintiff's doctor recommended that she take an HIV test.

It is undisputed that Lane did not have the authority to terminate Plaintiff. Plaintiff asserts, however, that though Thomas was the one with authority to terminate Plaintiff, she was merely the "cat's paw" used to effectuate Lane's discriminatory animus. In support of this Plaintiff notes that Lane testified that she recommended that Plaintiff be terminated, that Thomas made no independent investigation of Plaintiff but instead relied on the investigation of Lane and Ellis, and that Lane was the one who actually told Plaintiff she was terminated during the meeting with Plaintiff, Thomas, Ellis and Lane. Lastly, Lane testified that she completed the form identifying the reasons for Plaintiff's termination.

■ The Eleventh Circuit has recognized the "cat's paw" theory-that causation may be established where the decision maker does not conduct his own independent investigation but instead relies upon the investigation of one with discriminatory animus. *See Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236 (11th Cir. 1998). "However, the fact that a supervisor takes an employment action based upon a recommendation or information provided to him by others does not, standing alone, necessarily imply that the supervisor may be viewed as having being utilized as the cat's paw of the recommending employee." *Curtis v. Teletech Customer Care Management, Inc.*, 208 F.Supp.2d 1231, 1243–44 (N.D.Al.2002). The causal link is severed if "instead of merely tacitly approving or otherwise 'rubber stamping' another's adverse recommendation or allegations, the decisionmaker conducts an 'in-

dependent investigation' into the allegations against the plaintiff." *Id.*

Plaintiff admits that both Ellis and Lane informed Thomas that Plaintiff did not return for work from her vacation as scheduled and that both Ellis and Lane communicated to Thomas the results of their investigation. *Def.'s SMF* ¶¶ *40, 41; Pl.'s Resp.* ¶¶ *40, 41*. Plaintiff admits that Ellis also gave Thomas information regarding Plaintiff's tardiness and previous failure to work as scheduled. *Id. at* ¶ *41*. Lastly, Plaintiff concedes that Thomas had independent knowledge of several disciplinary issues involving Plaintiff in January and April of 2001. *Id. at 24*. Because Thomas received information independently and from a source other than Lane, it does not appear that this is a case where the decision maker, Thomas, was a conduit for the recommender's, Lane, discriminatory animus as Thomas did not simply rubber stamp Lane's recommendation.

Because Thomas was the decision maker and had no knowledge of Plaintiff's possible need for an HIV test, there is no genuine issue of material fact as to whether Thomas regarded Plaintiff as having a disability or whether she terminated her as a result of such alleged regarded disability.

### B. Regarding Plaintiff as Disabled

■ Defendant's second argument is that even if Lane were responsible for the termination decision, she did not regard Plaintiff as disabled because (1) Plaintiff's statements regarding the possible need for an HIV test were too vague to form the perception that Plaintiff was disabled, (2) Lane does not perceive HIV as a disabling condition, and (3) Lane's statement evidences only that she believed Plaintiff was unable to perform a narrow range of jobs for a limited period of time which is not a disability.

To establish that Lane regarded Plaintiff as having a disability, Plaintiff must show that though she has no impairment she was treated by Lane as having a substantially limiting impairment. 29 C.F.R. § 1614.203(a)(5). To show Plaintiff was treated as being substantially limited in her ability to work she must show that she was considered to be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *See Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1327(11th Cir.1998).

First, assuming that having AIDS or being HIV positive constitutes a disability, there is nothing to indicate that Lane believed Plaintiff had AIDS or was HIV positive. The information Plaintiff gave to Lane was first that she might have malaria and second that her doctor suggested she take an AIDS test. Plaintiff admits that she never told Lane she had AIDS or HIV. Looking at the above evidence in the light most favorable to Plaintiff, it does not support the contention that Lane believed Plaintiff actually had AIDS.

Further, assuming Lane did believe Plaintiff had AIDS or was HIV positive and that she told or implied to Plaintiff that she should not work around food until she discovered whether she in fact was HIV positive, this does not constitute treating Plaintiff as though she was substantially limited in the major life activity of working. As previously stated, to show Plaintiff was treated as being substantially limited in her ability to work she must show that she was considered to be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *See Standard v. A.B.E.L.*

*Servs., Inc.,* 161 F.3d 1318, 1327(11th Cir. 1998). Being told she could not work around food for a limited period of time, until she took an AIDS test, is not a significant restriction in the ability to perform a class or broad range of jobs. There is nothing to indicate that Lane believed Plaintiff could not perform other management jobs or could not return to work after taking the test. The evidence before the Court, looked at in the light most favorable to Plaintiff, does not indicate that Plaintiff was treated as though she was substantially limited in the major life activity of working.

## V. Conclusion

For the above stated reasons, Defendant's Motion for Summary Judgment [# 27–1] is **GRANTED** and all claims are dismissed against the Defendant.

As such, Defendant's Motion to Compel Complete Responses [# 13–1], Motion to Compel Complete Testimony of Leventis Erhueh [# 23–1] and Motion to File Response to Plaintiff's Statement of Material Facts [# 41–1] are **DENIED as moot.**

Plaintiff's Motion to Extend Time to Respond [# 34–1] and Motion to File Brief in Excess [# 36–1] are **GRANTED.**