Kiian JACKSON, Plaintiff,

v.

MID–AMERICA APARTMENT COMMUNITIES, Defendant.

No. CIV.A. 2:03cv426–A.

United States District Court, M.D. Alabama, Northern Division.

July 13, 2004.

C. Michael Quinn, Kevin W. Jent, Birmingham, AL, for Plaintiffs.

Louis P. Britt, Memphis, TN, Susan W. Bullock, Birmingham, AL, for Defendants.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, Senior District Judge.

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. # 17) and a Motion to Strike (Doc. # 28) filed by the filed by the Defendant, Mid–America Apartment Communities.

The Plaintiff originally filed a Complaint in this case on April 21, 2003, bringing claims under Title VII, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

For the reasons to be discussed, the Motion for Summary Judgment is due to be DENIED, and the Motion to Strike is due to be DENIED in part and DENIED in part as moot.

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party

"must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. AI Transport,* 229 F.3d 1012, 1026 (11th Cir.2000)(*en banc* ).

### III. *FACTS*

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Kiian Jackson ("Jackson"), is an African American man who was employed in 1999 by Mid–America Apartment Communities ("Mid–America"). Jackson was employed at Mid–America's Montgomery, Alabama location known as The Paddock Club Apartments ("the apartments"). Jackson began as an Assistant Service Technician. In 2001, Jackson was promoted to the position of Lead Service Technician.

Lidror Chatmon became the Property Manager at the apartments in January 2002. Susan Desmond ("Desmond"), Chatmon's supervisor, did a walk-through of the property and expressed concerns about the condition of apartments and the property.

A few weeks after Desmond's walk-through, Jackson was told by Chatmon that he was being terminated. Some time after that, Jackson was contacted by Chatmon who told him that she was told by Desmond to fire Jackson, or that Chatmon would be fired.

Jackson was replaced as Lead Service Technician by Tim Bunn ("Bunn"), a white man. Chatmon has stated in a declaration that Bunn was not performing his maintenance duties, and that she reported this to Desmond, but Desmond did not tell her to reprimand Bunn. By contrast, according to Chatmon, Desmond instructed Chatmon to reprimand Jackson about his job performance when Jackson was the Lead Service Technician.

### IV. *DISCUSSION*

Where, as here, a plaintiff seeks to prove intentional discrimination on the basis of race under Title VII and § 1981 by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] Under this framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true rea-

---

**1.** The analysis applied in Title VII cases also applies to § 1981 claims. *Turnes v. AmSouth* *Bank,* 36 F.3d 1057, 1060 (11th Cir.1994).

son for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. 1089; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To establish a prima facie case of discriminatory discharge a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was replaced by a person outside of his protected class. *See Maynard v. Board of Regents of Div. of Univ.,* 342 F.3d 1281, 1289 (11th Cir.2003).

Mid–America does not dispute that Jackson can meet three of the requirements of the prima facie case, but does state that it disputes that Jackson was qualified for the position of Lead Service Technician. Mid–America argues that given the evidence that the maintenance at the apartments was not being performed according to the standards set by Mid–America, Jackson cannot show he was qualified for the position. Jackson responds that since he held his position for an extended period, his qualifications for the position can be inferred, citing *Crapp v. City of Miami Beach,* 242 F.3d 1017, 1020 (11th Cir.2001).

In *Young v. General Foods Corp.,* 840 F.2d 825, 830 n. 3 (11th Cir.1988), the Eleventh Circuit determined that a plaintiff who was fired from a position after serving just under three years did not have to establish his job qualifications as part of the prima facie case because the employer asserted poor job performance as its reason for firing the plaintiff. *Id.* at 830 n. 3. The court stated under these circumstances, it need not decide whether the plaintiff was entitled to an inference of qualification, and that the focus of the inquiry is not a determination of whether the plaintiff was in fact performing his job adequately, but rather, whether there was sufficient evidence that this was the real reason for the termination. *Id.* Therefore, Mid–America having pointed to job performance as its reason for termination, and having conceded the other elements of the prima facie case, the court considers Jackson to have adequately stated a prima facie case of discrimination.

■ Mid–America articulates Jackson's performance issues in his position as its legitimate non-discriminatory reason for his termination. The articulation of this reason is complicated somewhat, however, by a declaration of Chatmon, which is the subject of a motion to strike. Initially in moving for summary judgment, Mid–America contended, based on its interpretation of Chatmon's deposition testimony offered in another case,[2] that Chatmon terminated Jackson for his performance. Mid–America has moved to strike Chatmon's declaration which it contends is inconsistent with that testimony. The court will, therefore, first address that issue.

Mid–America argues that portions of Chatmon's declaration are a sham because they contradict her previous deposition testimony. In her declaration, Chatmon states, "I terminated Kiian Jackson from his position of Lead Service Tech because

---

2. That case, *Lidror Chatman v. Mid–America Apartment Communities,* 2:03cv563–A, in which Chatmon challenges her own termination, is also pending before this court.

I was told by Susan Desmond that if I did not fire him, I would be fired." Chatmon Declaration at ¶ 4. She further states that "Susan said to fire him." *Id.* at ¶ 5. Mid–America points to Chatmon's deposition as being is in conflict with her later declaration because she states in her deposition that she made the decision to terminate Jackson, and that the decision was based on her opinion that Jackson was not going to be able to do things that needed to be done, and that she said to herself "if I don't get rid of him, I'm going to lose my job per Susan." Defendant's Exhibit 2 at page 254:9–11. She also stated that she told Jackson she thought he couldn't "cut it." *Id.* at 258: 18–19. Mid–America states that Chatmon only testified that it was in the back of her mind that if she did not terminate Jackson, it could end up costing her job, not that she was threatened with termination if she did not fire Jackson. Mid–America contends, therefore, citing to *Van T. Junkins and Assoc. v. U.S. Industries,* 736 F.2d 656 (11th Cir. 1984), that Chatmon's declaration is due to be stricken.

In *Van T. Junkins,* the Eleventh Circuit held that when a party has given "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 657.

Jackson argues in response to the Motion to Strike that the declaration does not contradict Chatmon's deposition testimony. Jackson points out that in her deposition, as quoted above, Chatmon said she was afraid if she did not get rid of Jackson, she would lose her job "per Susan." According to Jackson, this means that Desmond told Chatmon she would lose her job if she did not fire Jackson. Jackson argues, therefore, that to the extent that there is

an inconsistency in Chatmon's position on why Jackson was fired, the inconsistency occurs within her deposition and, therefore, is not due to be stricken, but presents a question of fact for the jury.

First, it is not clear that the *Van T. Junkins* case even applies in this situation because the deposition testimony allegedly contradicted by Chatmon's declaration was a deposition conducted of Chatmon in a different lawsuit, not the instant case. *See Israel v. Sonic–Montgomery FLM, Inc.,* 231 F.Supp.2d 1156, 1165 (M.D.Ala.2002) (distinguishing *Van T. Junkins* on the basis that the allegedly contradictory statements were made in two different lawsuits, only one of which was based on the plaintiff's termination, the other of which was based on the speaker's termination). Second, even assuming that *Van T. Junkins* could apply in this case, the court agrees with Jackson, that the words "per Susan" can be interpreted to mean that she was told by Desmond that she would be fired if she did not get rid of Jackson. In other words, a statement by Chatmon that if she did not fire Jackson she would lose her job "per Susan," and a statement that Desmond told her if she did not fire him, she would be fired, can be read as being consistent with one another. Under this reading, the court agrees with Jackson that any inconsistency between these statements and other deposition testimony is also contained within the deposition. Therefore, the statements by Chatmon are properly characterized as statements that "create an issue of credibility or go to the weight of the evidence," and not statements which are "transparent shams." *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir.1986). The court also notes that it is a question of credibility and, therefore, a question for the jury, as to why Chatmon mentioned other reasons for Jackson's termination if she terminated

him because she was threatened with discharge if she did not fire him.

██ Having determined that Chatmon's declaration is not due to be stricken, at least with respect to the statement discussed above, the court now turns to Jackson's arguments that the reason articulated by Mid–America for his termination is pretextual. Jackson has characterized this case is a "cat's paw" case, stating that the discriminatory animus on the part of Desmond was the basis of Chatmon's decision. Mid–America responds that, under such a theory, pretext cannot be established because the link between Desmond's alleged discriminatory motive and Chatmon's decision was broken by Chatmon's independent evaluation of Jackson's work performance.

In a "cat's paw," situation the person bearing discriminatory animus is the true decision maker, and "the titular 'decision maker' is a mere conduit for ... discriminatory animus." *Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir.1998), *cert. denied*, 528 U.S. 930, 120 S.Ct. 327, 145 L.Ed.2d 255 (1999). The court agrees with the application of the "cat's paw" label to this case to the extent that Chatmon's declaration and deposition have created a question of fact as to whether the decision was truly made by Chatmon, or was made by Desmond. The court does not agree with Mid–America's argument, however, that this is a case in which the casual link is broken as a matter of law by independent investigation.

██ In a cat's paw factual scenario, the causal link between the animus of a subordinate and the decision maker's decision is severed if "instead of merely tacitly approving or otherwise 'rubber stamping' another's adverse recommendation or allegations, the decision maker conducts an 'independent investigation' into the allegations against the plaintiff." *Iduoze v. Mc-*

*Donald's Corp.*, 268 F.Supp.2d 1370, 1375 (N.D.Ga.2003) (citation omitted).

This case, accepting Jackson's view of the facts, involves threatened termination by Desmond, a supervisor, to Chatmon, a subordinate employee. While the Eleventh Circuit has applied the cat's paw theory in the context of a threat, *see Llampallas*, 163 F.3d at 1249, that case involved a threat by a subordinate employee to quit her position if the decision maker did not terminate another co-employee, not a threat by a superior to a subordinate. In this case, drawing all reasonable inferences in favor of the non-movant, even though Chatmon testified as to her opinion of Jackson's performance, her deposition and declaration state that Desmond's threat was the basis for the decision. A reasonable jury could conclude that regardless of Jackson's performance, Desmond's threat to fire Chatmon if she did not fire Jackson was the basis for Chatmon's decision. Accordingly, the court concludes that evidence of an evaluation of the terminated employee's work performance by the decision-making subordinate is not sufficient as a matter of law to break the "link" between the influence (threat) of the allegedly biased decision maker and the employment decision. The court must conclude instead that questions of fact, as well as credibility, have been presented as to the true basis of Chatmon's decision, which cannot be resolved in the context of a motion for summary judgment. *Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir.1996) ("The degree to which [the decision maker's] decisions were based on his own independent investigation is a question of fact . . . .").

Having concluded that a question of fact has been presented as to whether Chatmon or Desmond made the decision to terminate Jackson, the articulated reason by Mid–America that Jackson had per-

formance problems must be viewed in the context of the intent of Desmond, not Chatmon.[3] The burden, therefore, is on Jackson to present evidence to show the pretextual nature of Desmond's decision to terminate Jackson for performance-related problems.

As stated above, a plaintiff can demonstrate pretext (1) by showing that the legitimate non-discriminatory reason should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reason. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332 (11th Cir.1998).

Jackson contends that this court should conclude that reliance on performance issues as a reason for his termination is pretextual because Desmond exhibited racial animus by treating his white replacement more leniently than Jackson was treated. It is this evidence to which the remainder of Mid–America's Motion to Strike is directed. Mid–America contends that Chatmon has asserted facts that are not based on her personal knowledge and that she has made statements that would not be admissible at trial.

Mid–America points to Chatmon's statement in her declaration that Desmond did not take any steps to reprimand Bunn about his job performance. That statement may well be beyond Chatmon's personal knowledge, but the additional statement in Chatmon's declaration that Desmond did not tell Chatmon to reprimand Bunn is within Chatmon's personal knowledge and the Motion to Strike is due to be DENIED as to that statement.

Accepting Chatmon's statement that Desmond did not tell her to reprimand Bunn even though Chatmon reported work performance problems, and the evidence before the court that Desmond was critical of Jackson's work performance and told Chatmon to reprimand and ultimately fire him, it appears to the court that a reasonable conclusion could be drawn that the two persons of different races were treated differently by Desmond. Although Mid–America contends that Bunn's short tenure makes the comparison between Bunn and Jackson improper, Mid–America does not explain why length of performance renders the two comparators dissimilarly situated. Particularly given the fact that Chatmon later was terminated, apparently at least in part because of the condition of the property due to maintenance issues within Bunn's control, the court cannot simply conclude at this point in the proceedings that Bunn and Jackson are invalid comparators with respect to job performance just because Bunn engaged in poor performance for a shorter period of time.

The court has been presented with evidence that a white comparator who replaced Jackson and about whom work performance problems had been reported was allowed to continue in his position without Desmond telling Chatmon to discipline him, and with evidence that Desmond told Chatmon to discipline and ultimately terminate Jackson for work performance issues. Viewed in a light most favorable to the non-movant, the court concludes that this is evidence of different treatment sufficient to establish pretext, either because it calls into question the veracity of the reason that Jackson was terminated for poor performance because another employee was not also terminated, or, alternatively, because it shows dissimilar treatment of a person outside of Jackson's race. *Mayfield v. Patterson Pump Co.*, 101 F.3d

---

**3.** If the question of fact is resolved at trial adversely to Jackson, that is, if the trier of fact concludes that Chatmon acted on her own in terminating Jackson, then it appears that Jackson has no evidence to establish discrimination by Chatmon on the basis of race.

1371, 1378 (11th Cir.1996)(implying that evidence of different treatment of persons of other races would have been evidence of pretext). Therefore, the court concludes that summary judgment is due to be DENIED.[4]

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion to Strike (Doc. # 28) is DENIED as to Lidror Chatmon's statements that she fired Kiian Jackson because she was threatened by Susan Desmond and that Susan Desmond did not tell her to discipline Tim Bunn. The Motion to Strike is DENIED as moot in all other respects.

2. The Motion for Summary Judgment is DENIED.

**4.** Mid–America has also challenged various statements by Chatmon as being conclusory, such that Desmond was more lenient with Bunn and that she did not want Jackson to live on the property. Having concluded that pretext has been established based on other statements by Chatmon which are admissible, the court need not address the admissibility of these statements at this time and will deny the remainder of the Motion to Strike as moot. Mid–America is free to timely file a motion in limine to exclude any testimony by Chatmon which it feels is inadmissible if it chooses to do so.